Crane et al. *v.* French, Admr.

FRANCIS R. CRANE et al. *v.* SAMUEL G. FRENCH, Admr. &c.

1. HIGH COURT: ERROR NOT PREJUDICIAL NO GROUND FOR REVERSAL.—Errors which are not prejudicial to the appellant or plaintiff in error, are no ground for a reversal of the judgment. And hence, if a plea, which is technically good, be adjudged bad on demurrer, and the defendant under leave granted plead a new plea, setting up the same defence upon which issue is joined, the error in disallowing the first plea is immaterial, and is no ground to reverse the judgment.

2. STATUTE OF LIMITATIONS: APPLIES TO SUIT TO WHICH IT IS PLEADED: NOT AFFECTED BY ANOTHER ACTION.—The defence of the bar of the Statute of Limitations applies strictly to the particular action to which it is pleaded; and hence, if that suit be not brought within the statutory period, the bar of the statute cannot be avoided by showing that another action had been brought by the plaintiff against the defendant on the same cause of action within the period limited by the statute.

3. ACTION: ABATEMENT OF SUIT: EFFECT OF.—The abatement of a suit is a complete termination of it; and it is henceforth to be regarded as having answered no substantial legal purpose; and it cannot therefore have any effect upon a suit subsequently litigated between the same parties in the same cause of action.

4. STATUTE OF LIMITATIONS: EFFECT OF STATUTE, HUTCH. DIG. § 119, P. 672: REVIVOR AND ABATEMENT.—The statute (Hutch. Dig. p. 672, § 119) which provides "that all actions which have been commenced and prosecuted for or against any testator or intestate (except actions of slander and for injuries or torts to the person), shall and are hereby declared to survive for and against executors and administrators with the same effect that they might or could have been had or maintained for or against the testator or intestate, &c.," refers only to actions which were *depending* at the time of the death of such testator or intestate: and it does not, therefore, have the effect to authorize the institution of another suit, to operate as a continuation of a suit commenced against a defendant in his lifetime, but which was abated by his death before process was served, so as to exempt the last suit from the operation of the Statute of Limi-

tations, where the time limited by the statute had expired after the commencement of the first, and before the institution of the second suit.

5. SAME: JOURNEYS ACCOMPTS: NOT ALLOWABLE HERE.—The common law writ of "*journeys accounts,*" by which, when an abatement of a suit happened without fault imputable to the plaintiff, he was permitted to bring a fresh suit, which was a *quasi* continuance of the first writ, and placed him in the same situation that he would have been in if he were still proceeding on that writ, is inapplicable to our system of jurisprudence, and is not allowable here.

6. SAME: EQUITABLE EXCEPTIONS NOT ALLOWED: CASE IN JUDGMENT.—The rule is firmly settled in this State, that no equitable exceptions will be engrafted by the courts on the Statute of Limitations; and hence, a suit brought within one year after the abatement of a former suit on the same cause of action by the death of the defendant, is not within the provisions of the 14th section of the Act of Limitations of 1822, allowing a new suit to be brought within one year after the arrest or reversal of a judgment rendered in favor of the plaintiff.

7. CONTRACT: PUBLIC POLICY: CONTRACT TO RENOUNCE RIGHT SECURED BY LAW.—A party may omit to take advantage of a right secured to him by law, but he cannot bind himself by contract not to avail himself of such right, if the right be secured to him on grounds of public policy.

8. SAME: STATUTE OF LIMITATIONS: BENEFIT OF CANNOT BE CONTRACTED AWAY.—The Statute of Limitations is founded on reasons of public policy to discourage stale demands and the consequent litigation and prejudice to the just rights of parties. And hence, a covenant by a debtor that he will never plead the statute in bar of his debt, will not bind him as an estoppel to rely on such plea; but such a covenant will have the effect of a new promise to pay the debt, and will be barred by the lapse of time prescribed by the statute.

ERROR to the Circuit Court of Claiborne county. Hon. Hiram Cassidy, judge.

*J. B. Thrasher*, for plaintiffs in error.

Two errors have been assigned by the plaintiffs in error in this case to reverse the judgment of the court below. The first assignment, however, relates to matter of form in pleading, and turns upon the proper form of pleading the Statute of Limitations; that is to say, whether the plea should have been non assumpsit, *infra sex annos*, or *actio non accrevit infra sex annos*. The note sued on was dated 27th day of May, 1842, and became due and payable first December, 1844. The present suit was instituted the 12th of February, 1858. The declaration declared on a subsequent promise by James Crane, in his lifetime, laying the undertaking and promise on the first day of December, 1850. And therefore non assumpsit, *infra*

*sex annos,* was adopted as the proper form of pleading the Statute of Limitations, and is believed to be strictly correct.

Chitty, in his late work on Pleading, says : " In *indebitatus assumpsit,* and in other instances where the statute begins to run from the time of the promise, that non assumpsit, *infra sex annos,* is the proper plea." See 3 Chitty's Pl. 940, note F.; 2 Saund. 1, note 1. The court therefore erred in extending the demurrer, which was, well taken to the first replication, back to the second plea.

The second assignment of error is, that said Circuit Court erred in " overruling the demurrer of defendants in the court below, to plaintiff's first replication to defendants' second plea, answering over."

The whole merit of the case is involved in this assignment of error. That the demurrer of defendants in the court below ought to have been sustained to plaintiff's first replication to defendants' second plea of *actio non accrevit infra sex annos,* will not admit of a doubt. The note sued upon was due and payable 1st December, 1844. The plaintiff, in the court below, instituted this suit on the 12th day of February, 1858 ; alleging, in his declaration, a subsequent undertaking and promise to pay on the 1st day of December, 1850 ; and in his first replication sets out said subsequent undertaking and promise to pay on the 1st December, 1850 ; and that within six years from said 1st day of December, 1850, to wit, on the 1st day of November, 1856, that he instituted a former suit on said note against said Crane to March term of said court, 1857. That said Crane died on the 1st day of February, 1857, and that by reason of said death his said writ abated. That on the 24th day of March, 1857, the sheriff returned said writ not found, and that letters of administration on said Crane's estate were granted 27th April, 1857 ; and that recently after the expiration of nine months from the grant of administration, the present suit was instituted, with intention to prosecute the same in continuation of his former suit, &c.

There is no color for the pretension that the facts disclosed and set out in this replication, prevent the operation of the Statute of Limitations, or save the bar of the statute. The plaintiff sued 1st November, 1856. The claim sued on was barred 1st December, 1856, one month afterwards; process was not served on Crane, and

he did not die until 1st February, 1857. The claim, therefore, had been barred two months at the time of Crane's death, and four months at the time of the grant of administration on his estate.

The rule of law is well settled, that if a debt is due, and the Statute of Limitations has commenced running before the death of the debtor, that then it is not suspended by his death, until administration is taken out on his estate; *Abbott* v. *McEllroy,* 10 S. & M. 101; 13 S. & M. R. 513; 13 Wend. 267; 3 Stewart's R. 172.

This rule of law and the adjudication of this court, in the case of *Abbott* v. *McEllroy,* 10 S. & M. 101, would seem to be decisive of the case under our statute. How could this suit be prosecuted in continuation of the former suit, which was barred in the lifetime of Crane? The parties are new and distinct parties. The writ in this suit is in no way connected with the former suit or parties: but is a new and original writ, and the replication alleges that the former suit abated by the death of Crane. It would be difficult, therefore, to regard this suit as a continuation of the former suit, without a single connecting link, and with the fact staring us in the face, that the former suit was abated, the cause of action barred by the Statute of Limitations, and the parties new, distinct, and original.

Our statute says, all actions, &c., "shall be commenced and sued within six years next after the cause of action shall have accrued, and not after." Hutch. Code, 825, § 4, Ib. 827, § 14, also provides for the commencement of a new action within one year after the reversal of a judgment in favor of a plaintiff, or after the arrest of a verdict on a judgment in favor of a plaintiff. But this is the only exception in the statute, and this exception does not extend to the facts of this case, or embrace them, but is confined to plaintiffs in a particular class of cases, who have had a judgment in their favor reversed, or a verdict in their favor arrested, and judgment given against them. But if this case came within the provisions of the latter statute in point of fact, and history, yet the present suit was not instituted within the year prescribed, from the time of the abatement of the former writ, on 1st February, 1857, by twelve days.

But it is contended that the commencement of the former suit stopped the running of the statute. If the commencement of the

former suit, on the 1st of November, 1856, stopped the running of the statute, then the commencement of that suit rendered the cause of action immortal, and there is no limit to it, or period of time within which it may not be brought. To what period of time did the suspension extend, or was it a general suspension without regard to time ?

The commencement of a suit does not stop the running of the statute ; but it will save the bar, in the language of the courts, provided the writ be afterwards served. This is the principle in all the authorities, both English and American. The issuance of a writ is the commencement of the action in reference to the Statute of Limitations, provided the writ be afterwards executed : but it is held not to be a good commencement to save the bar unless the writ be afterwards executed. 4 Cushman R. 399 ; 7 Verm. R. 429 ; 6 Term R. 617 ; 2 Raymond, 883.

But no court, either English or American, ever did decide that the commencement of a suit stopped the running of the Statute of Limitations, unless Judge Clayton so decided in *Bacon* v. *Gardner*, 23 Miss. R. 60, which on examination of the authorities cannot be supposed for a moment. That question, as here presented, was not before him, and it is fair to presume, that he only intended to decide, in the language of all other courts, that the commencement of the suit within the time, " saved the bar," or " saved the statute," or in the language of the only case which the judge said that he could find to sustain him (cited in Harrison's Digest, 938), " to prevent the operation of the statute, provided the writ be afterwards served." The language of Lord Mansfield in the case of *Johnson* v. *Hargreaves*, 2 Burr. 950, which Judge Clayton cites and approves, is, that it " saves the bar."

The language of the court in *Baskin* v. *Wilson*, 6 Cowan, 473, is, that it " saves the statute." In *Ross* v. *Luther*, 4 Cowan, 161, that it " saves the Statute of Limitations." In 5 Cowan, 525, " that it saves the bar." In 3 Wend. 475, Judge Marcy says, " it defeats the operation of the statute." This, he says, " is said to save the statute." In 14 Wend. 653, the chancellor calls it " saving the statute." In 18 Pickering, 533, Judge Putnam also calls it " saving the statute," which is the language used by all courts, and it is not to be presumed that Judge Clayton intended to decide contrary to

every other decision on the subject, either in England or America, and place himself in antagonism to every adjudication on the subject, and in opposition to his only friend in judicial construction cited in Harrison's Digest, 938, that the commencement of the suit stopped the running of the statute. His friend in Harrison's Digest says, "it prevents the operation of the statute."

The truth is, that it does not stop the running of the statute. To decide that it did, would overturn one of the soundest and best settled maxims of the law, to wit: that when the statute begins to run, no subsequent accruing disability stops it.   4 How. R. 31; 2 S. & M. 452.

And by our laws if a debt is due and the Statute of Limitations has commenced running before the death of the debtor, it is not suspended by his death, until administration is granted on his estate. 10 S. & M. 100; 28 Miss. R. 151; 13 Wend. 267; 3 Stewart's R. 532.

In the case at bar, the debt was due, and the statute had commenced running in the lifetime of Crane, and at the time of his death, the debt had been barred two months, and at the time of the grant of letters of administration on his estate, the debt had been barred four months, as the record shows upon its face.

But it is contended upon the authority of Angell on Limitations, 333, that the suing out of the writ is the commencement of the action, and that although the writ was not served, and the same abated by the death of Crane, two months after the bar of the statute had attached, yet that it saved the bar, or rather that the suing out of the writ though never executed, stopped the running of the statute, and that the plaintiff is entitled to bring a new suit within nine months after the grant of administration, notwithstanding that the debt had been barred two months at Crane's death, and four months at the time of the grant of letters on his estate.   In the language of the demurrer, "the law does not tolerate so great an absurdity as to permit the time of nine months, allowed to administrators, after grant of letters, before they can be sued, to revive stale demands, which have been fully barred by limitation in the lifetime of the debtor."

Angell on Limitations does seem to convey the idea that the suing out of the writ is the commencement of the action to save the bar

of the Statute of Limitations. But this is untrue, unless the writ is afterwards executed, or a regular continuance shown, until an *alias* or *pluries* writ, issuing in the same cause, is served; and the cases to which he refers do not sustain him, but fully sustain this latter position. That there must be a service of a writ connected with the commencement, which. commencement must be before the bar attaches, is fully demonstrated in the authorities referred to by Angell. First, that the writ to save the bar must be executed, or the cause regularly continued until the service of a writ is had in the case connected with the first writ issued, or the bar is not saved.

In *Baskin* v. *Wilson*, 6 Cowan, 471, the court say, "To save the bar of the Statute of Limitations, on the ground of unexecuted process, within the six years, the plaintiff must reply, that process was issued out, and returned *non est inventus*, and connect it by continuances, with the immediate process on which the defendant was arrested. And this replication must be sustained by evidence."

In the case of *Soulden* v. *Rensselaer*, referred to in 3 Wend. 472, after a very extended review of authorities both. English and American, the court decide that the issuing of the *capias* will not save the bar of the Statute of Limitations, unless it is shown that the process on which the defendant was arrested is a continuation of the process originally issued in the case, as that it was an *alias* or *pluries*. 3 Wend. 472; 3 Term R. 662; 2 Sellons Pr. 343; 5 Barn. & Ald. R. 452; 14 Wend. 83.

In *Stonway* v. *Perry*, a *capias* was issued before the statute bar attached, but was not served. After the limitation had expired a *capias* per continuance was issued, served, and returned. It was held that the first writ not being returned, could not be connected with the second writ, to save the statute, and that the bar attached. Bos. & Pul. 157; 14 East, 491.

In *Soulden* v. *Rensselaer*, Judge Marcy says, " The question in litigation between the parties in this case was whether this suit had been commenced within six years after the new promise. The commencement of a suit, says he, was proved, but whether it was this suit or not depended on the process on which the defendant was arrested and brought into court." 3 Wend. 477; 1 Lord Raymond, 432.

The cases of *Stokes* v. *Corporation of New York*, 14 Wend. 83, and *Davis* v. *West*, 5 Wend. 63, and the case reported in 2 Barn. & Ald. 257, settle the same principle, and reason the questions out at length. ·

The same principle, settled in 6 Cowan, 471, is again laid down in 5 Ib. 519, and 3 Term R. 662, to wit: that in order to save the statute on account of process unexecuted, the plaintiff must reply that process was sued out and returned *non est*, and connect it with continuances to the immediate process on which the defendant was arrested.    5 Cowan, 519; 3 Term R. 662.

Angell on Limitations, 334, says : " The general rule appears to be, in this country, that at the time of suing out of the writ, the action commences;" and cites 1 Caines R. 79; 3 Johns. R. 42; 15 Ib. 323 ; 15 Mass. R. 859, *et al.*

To this statement of the general rule, Mr. Angell ought to have added,—provided the writ was afterwards served, or the cause regularly continued, until an *alias* or *pluries* writ in the same case was executed; for such was the principle settled in each of the cases above cited, and in every other authority.

In the case cited from 1 Caines R. 69, the writ was executed, and the question was, which commenced the action, the writ or declaration ?

The case cited from 15 Johns. 42, was a declaration for a libel. The writ was executed, and the question was again between the writ and declaration.

The case cited from 15 Johns. R. 323, was a case where the writ was executed, and the question was between the writ and declaration.

The case cited in 15 Mass. 359, was an action of replevin.    The writ was executed.    The question was again between the writ and declaration.    So in like manner, in 12 Johns. 430 ; 1 Pickering, 202 ; 17 Ib. 407 ; 18 Ib. 521 ; 7 Greenleaf, 370, and 8 Ib. 207.

And Angell does not refer to a single authority, to prove that the · suing out of that writ is the commencement of the suit, and saves the bar of limitations, in which the writ was not executed, or the cause continued from term to term, until an *alias* or *pluries* writ was served.    This regular continuance to save the bar must be proved by the record, and the production of the original *alias* and

*pluries* writs up to the service on the defendant.   Otherwise there is not such commencement of the suit as will save the bar; but there is an end to the suit, and the bar attaches.   This demonstrates that the commencement of a suit within the time does not stop the running of the statute, but only saves the bar,—provided you hold on to your first suit, commenced in time until you get a service of a writ,—so that the service of a writ in the case, thus commenced in time, is indispensable to a good commencement to save the bar.

This is the settled doctrine of all the cases, without exception; but if you fail in getting a service of the original writ, or of an *alias* or *pluries* writ in the case, or, having got it, fail in tracing back the connection, by regular continuances, to the first commencement, then there is an end to the suit, and no new suit can be sustained after the bar of six years has expired.   If the commencement of a suit stopped the running of the statute, then surely the plaintiff ought to be allowed the unexpired time from the commencement of his suit to the ending of the six years' bar, within which to commence a new suit,—where his suit commenced before the expiration of the time, had abated, as in the present case. Yet no such case can be found in the books, unaided by statutory regulations.

In the case of *Allen* v. *Man*, 1 Chip. Verm. R. 94, the court decided that the taking out of the writ, is the commencement of the process to avoid the statute, if it be served in time for the next court to which it is returnable.   Angell on Limitations, 336, n. 1.

In *Magraw* v. *Clark*, 6 Watts (Penn.) R. 528, the court held, that if a writ issued against two defendants, and be served upon one only, and an *alias* writ subsequently issued against the same two defendants in the case, which is served upon both defendants, that this is for all purposes a new suit, and not a continuance of the first, so as to avoid the operation of the statute, and the bar having expired, the case is at an end.   Angell on Limitations, 239, n. 1.

But the English courts and the courts of New York hold, that a plaintiff cannot avail himself of a *capias*, issued to save the bar, although regularly returned, entered, and continued on the roll, and the continuances carried down to the time of issuing the process on which the arrest was made, unless he shows that the process

on which the arrest was made, is a continuance of the process originally issued in time, as that it was an *alias* or *pluries*, &c., and the continuation of the suit must be proved, and cannot be presumed.    3 Wend. 472; 5 Cowan, 519 ; 14 Wend. 83.

All the authorities, however, require the writ to be served, or the commencement in time will not save the bar.   None of the authorities permit a new suit, where the first suit, commenced in time, has abated, as in the present case, if the six years have expired.

This brings us back to where we started, and to the question, Will the commencement of a suit in time *save* the bar ?   It will, provided the writ is executed, but not otherwise.   When the writ is executed, the courts, by a fiction, give it relation back to the commencement.   This fiction is the settled doctrine and language of the books.   This fiction would be unnecessary, and senseless jargon, *if the commencement of the suit stopped the running of the statute;* but no court ever held that it did, and Judge Clayton knows that it does not; but he used confused and unguarded language, in 23 Miss. R. 60.

But the counsel for the plaintiff invoke a further principle in aid of this new suit, based upon the supposed equities of the statute.

The Statute of 21 Jas. 1, ch. 16, § 4, provides, " that if in any of the said actions or suits, judgment be given for the plaintiff, and the same be reversed by error, or a verdict pass for plaintiff, and upon matter alleged in arrest of judgment, the judgment be given against the plaintiff, that he take nothing by his plaint, writ, or bill," that in all such cases the plaintiff, his heirs, &c., may commence a new suit within a year, and not after.

Our statute, Hutchinson's Code, 827, § 14, is a literal copy of the fourth section of the statute of James.

Now it seems to have been decided in England, and in some of the States of this Union, that where a suit has been brought within six years, and pending it the plaintiff dies, whereby it abates, though the six years have elapsed, the executor and administrator may bring a fresh suit within the equity of the above proviso of the fourth section of the statute of James, which new suit, courts have decided must be commenced within a year, in analogy to the statute, whence

Crane et al. *v.* French, Admr.

the rule is derived. This is the longest time that has been sanctioned by the courts, says Judge Nelson, in 10 Wend. 283.

But these decisions are expressly based upon the equities of the fourth section of the statute of James, and constitute judicial legislation, both as to the right to sue, and as to the limitation within which the new suit must be brought after the bar has attached, as the courts (so deciding) admit, that it is not within the proviso, or letter of the statute. See 10 Wend. 278 ; 2 Saund. Pl. & Ev. 63 h ; 1 Sewl. N. P. 113, n. 94; Bac. Abr. tit. Lim. 480 ; 2 Salk. 424.

In the case of *Schermerhorn* v. *Schermerhorn*, 5 Wend. 515, Judge Marcy says, the allowance of an exception to the statute, in such a case, has been considered judicial legislation. That the Statute of Limitations does not save the right of the plaintiff where the suit abated by his death, and his representative attempted to revive it after the six years had elapsed from the time the cause of action accrued, and within one year from the abatement of the first suit ; but that such a case has been considered within the equity of the exceptions to the act ; and that however much the court doubted the correctness of the construction, they felt bound by the former decision of the court.

The same principle is held in the case of *Barker* v. *Milliard*, 16 Wend. 572, where the first suit abated by the death of the plaintiff; and 8 Cranch, 84; 3 McCord, 452; 16 Pickering, 383; 2 Bay, 118, recognize the same principle.

But it must be recollected, that these are all cases where the first suit abated by the death of the plaintiff, and that the principle does not apply where the suit abated by the death of the defendant. No English or American decision can be found, applying the supposed equities to a suit abated by the death of the defendant, after the bar had attached ; for the simple reason, that the provision of the fourth section of the statute of James does not apply to defendants, but contains exceptions in favor of the plaintiffs, and does not extend to defendants. Neither does our statute extend to defendants. H. Code, 827, § 14, applies to plaintiffs.

These supposed equities, based upon the proviso in the fourth section of the statute of James, have never been applied to a suit abated by the death of the defendant ; nor is such a case supposed to be within the equity of the statute.

But whatever may have been the judicial legislation of the courts of England, and some of the States of this Union, in regard to the equities of the statute, yet our own High Court have settled that question by repeated decisions, that such equities do not attach in Mississippi; and if they did, then it is clear that the present suit was not commenced within the year.

In the case of *Butler* v. *Craig*, 5 Cushman, 629, the court say: "But it has long been the settled doctrine of this court, that no equitable exceptions are to be engrafted on the Statutes of Limitations of the State, and where there is not an express exception, the court cannot create one." 5 Cushman, 629.

In the case of *Kilpatrick* v. *Byrne et al.* 3 Cushm. 581, the court say: "That cases not excepted out of the operation of the general Statute of Limitations by the legislature, cannot be excepted by the courts."

In the case of *Robertson* v. *Alford*, 13 S. & M. 511, the language of the court is still stronger. In that case Judge Sharkey says: "The Statute of Limitations is one of good policy; it is a statute of repose, and should not be so construed as to defeat the object intended by creating exceptions, in cases supposed to be analogous in principle to those expressly excepted. To do so, would be to undertake to supply defective legislation by engrafting new provisions on the statutes." 13 S. & M. 512.

In the discussion of this case, the counsel for the plaintiff in the court below, invoked the doctrine of continuances by journeys accounts. The continuance, by journeys account, has been obsolete in England for two hundred years, and never was the law of this country. The Supreme Court of the United States, in 8 Cranch, 93, calls it the "antiquated doctrine of continuance by journeys account." In journeys account, the writ was originally granted *per diætas computatas*, meaning as many days' journeys as the plaintiff was distant from the Court of Chancery, where he was obliged to go to get a new writ, accounting twenty miles for a day's journey; and it was necessary to set out the number of days in the replication, that by computation it might appear that he was within the time allowed.

The court below sustained the demurrer to the second replication of plaintiff to defendants' second plea. This decision was acqui-

esced in by both parties, and was not appealed from nor brought before this court by writ of error ; and it is not, therefore, deemed necessary to argue the law involved in the second replication, and demurrer thereto.

The argument set up in the second replication, was that the Statute of Limitations should not run on the note until it was fully paid ; thus rendering the controversy on said note immortal, whilst the death of both parties has proven them mortal. At the time of making this agreement, on 1st December, 1850, the note lacked four days of being barred by limitation, and Crane had no right at that time to plead the statute, for the bar had not attached ; and the rule is well settled that an individual cannot renounce the future effect of the law. " No man can deprive himself of the right to plead the Statute of Limitations before the right has accrued." 2 Bouvier's Institutes, 38 ; 2 Bouvier's Law Dictionary, 243, word renounce.

Acts of limitation are based on public policy. Story's Conflict of Laws, p. 483. And contracts against public policy are void. Story on Promissory Notes, § 189 ; 17 Mass. R. 259. This agreement, however, has been treated by plaintiff throughout as a subsequent undertaking and promise, and can be viewed in no other light.

*W. S. Wilson*, for defendant in error.

We insist that the court did right in overruling the demurrer to the first replication. Within six years from the maturity of the note, Crane made a fresh promise to pay Roberts the amount thereof. Within six years from the making of that promise, suit was brought against him and prosecuted with all diligence. He died before the return day, the process not having been served, and thereby the suit abated. *Mandeville* v. *Allen*, 26 Miss. R. 397.

Recently, after the expiration of nine months from the grant of letters of administration, the suit was brought against the representatives. Can it be that if a suit be " commenced and prosecuted within six years after the right of action shall have accrued," and then is abated by an act of the Almighty, with no fault or negligence imputable to the plaintiff, that his remedy is altogether gone, and his right virtually destroyed ?

Our statute, Hutch. Dig. 830, § 4, provides that " actions on promissory notes shall be commenced and prosecuted within six years after the right of action shall have accrued."

Here, the plaintiff's suit was " commenced and prosecuted" within six years, as the statute directed, and abated by reason of no negligence in him, but by an act of God. It is plain, therefore, that the plaintiff did not allow six years to elapse without " commencing and prosecuting" his suit, and that his case is neither within the letter or the spirit of the statute. Although, therefore, six years of actual time had elapsed from the accrual of the cause of action to the time of commencing the second suit against the administrators, the question is whether the first suit against Crane, in his lifetime, shall not avail to prevent the bar of the statute.

Under the English statute of 21 Jas. 1, ch. 2, it has been uniformly held that a suit commenced and sued will avail to sustain a suit against the representatives of the original defendant, provided the second suit be brought within one year from the abatement of the first.

The third section of the statute of James enacts, that all actions of trespass, &c., and upon the case, &c., " shall be commenced and sued within the time and limitation hereafter expressed, and not after," &c.

It is sometimes said that where the statutory term has run, the second suit after abatement of the first is only allowed on an equitable construction of the fourth section of the statute of James, providing for a new suit within a year after judgment reversed or arrested on a reversal of outlawry.

On investigation of the early cases, it will be found that they rest on no such ground, but are put distinctly upon this, that a suit having been " commenced and sued" within the prescribed time, the case does not fall within the letter of the statute. See case, *Kinsey* v. *Heyward*, 1 Ld. Raym. 432.

In that case, after deciding that the writ was not good to continue the first suit abated as a writ by journeys accounts, the Chief Justice, Treby, goes on to say : " Yet the plaintiff ought to recover, notwithstanding the said statute pleaded. For the statute is, that actions upon the case, &c., shall be sued within the six years, &c. ; and for this reason, where an action is ' sued' within the six years,

Crane et al. *v.* French, Admr.

that seems to be excepted out of the words of the statute, and that if an action is sued within the said time, the party is out of the purview of the act, and at liberty to prosecute the said action or to sue another action at any time not restrained or limited by the statute." And he goes on to show that a suit having been brought within the six years, the statute was satisfied, but that the new suit should be brought within a reasonable time, which was settled by analogy to other cases at the common law to be one year, and quoting Lord Coke, that " the law delighteth in a year and a day." See Angell, Limitations, 344, and cases cited.

Elsewhere it is said that the year is the reasonable time within which to begin the new suit, by analogy to the fourth section, which prescribes that in the time allowed after arrest of judgment, &c. *Hodsden* v. *Harridge*, 2 Wms. Saunders, 63 h.

If this construction was put by the English courts upon their statute, how much more will this court feel itself compelled to give a like construction to the statute, in view especially of the 119th section of the Statute of " Testament and Administration." Hutch. Dig. 672.

It provides : " All actions which have been commenced and prosecuted for or against any testator or intestate (except actions of slander, and for injuries in torts done to the person), shall and are hereby declared to survive for and against executors and administrators, with the same effect that they might or could have been had or maintained for or against the testator or intestate, any law, usage, or custom to the contrary in anywise notwithstanding." Now here was an " action commenced and prosecuted" against James Crane in his lifetime. Had he lived, it could have been prosecuted to judgment against him. He has died, and the suit has abated. The statute says that the action survives against his administrators " with the same effect it might or could have been had or maintained against the testator himself." Is there any escape from the conclusion, that the statute intended that a cause of action, in which suit has been commenced against a person in his lifetime, shall be kept in the same plight and condition in which it was left at his death, and may be taken up with like effect against his representatives as it existed against himself ?

Let it not be supposed that the office of this section simply was

to provide for the survivor of suits by or against the executors and administrators. of deceased persons. The 111th section of the same chapter had already provided for that, declaring that such representatives should " have full power and authority to commence and prosecute any formal action whatever, &c., which testator or intestate might have commenced and prosecuted, except, &c.; and should also be liable to be sued, &c., in any action, &c., which might have been maintained against the deceased."

The 119th section would seem to have for its object clearly the extension of the common law writ of journeys accounts; whereby in some few cases, a plaintiff whose suit had been abated, not by any fault of his own, could sue out the writ of journeys accounts in continuation of his abated suit. 1 Bacon's Abridg. tit. Abatement, Q. p. 40.

The case then stands thus: Crane's note in favor of Roberts fell due 4th December, 1844. On 1st December, 1850, Crane made a new promise to pay Roberts the amount of the note.

On the 1st November, 1856, Roberts's administrator brought suit against Crane, which suit was prosecuted by filing a complaint at the instance of survivors, which was placed in the sheriff's hands.

Crane died 1st February, 1857, process never having been served on him; whereby the suit abated.

The grant of administration to Mrs. Crane and her son, was made 27th April, 1857.

The nine months during which suit could not be brought against them, expired the latter part of January, 1858.

On the 12th February, 1858, the suit was brought, to which the Statute of Limitations was pleaded.

It is submitted that, upon these facts set up in the replication to the Statute of Limitations, the court did right in overruling the demurrer to that replication.

In point of fact, six years of statutory time never has run against the promise made by Crane on the 1st December, 1850, because the suit was brought against him on that promise on the 1st November, 1856, one month before the expiration of the six years. Thereby the statute was arrested. It continued so arrested when Crane died, there being nobody to sue. So also when the grant of administration was made, because no suit could be brought against

the representatives during the first nine months, and the new suit was brought within one month after the nine months had expired.

Secondly. The replication of estoppel was also good. Crane agreed that if Roberts would not sue him, the Statute of Limitations should not run against the note until it should be fully paid.

Inasmuch as " every person can renounce the benefit of a law made for his protection," it was competent for Crane to make such an agreement. 1 Smith's Leading Cases, 718, 5th Amer. ed.; 4 Wend. 655; 15 Ib. 289; 11 How. S. Ct. Rep. 493.

*H. T. Ellett,* on same side.

The errors relied on in this case are:

I. Sustaining the demurrer to the plea of *non assumpsit infra sex annos.*

II. Overruling the demurrer to the first replication to the plea of *actio non accrevit infra sex annos.*

The whole case depends upon the question whether the replications to these pleas were good to avoid the effect of the lapse of time; for if they were good, then it makes no difference which plea was the proper one.

The first replication, which was sustained by the court below, we think was clearly sufficient, both under our statute, and at the common law, to avoid the Statute of Limitations. The note fell due the 4th of December, 1844. This replication shows that Crane made a new promise on the 1st of December, 1850, and that within six years from that date, to wit, on the 1st of November, 1856, suit was brought, declaration filed, and writ placed in the sheriff's hands to be executed. That Crane died on the 1st of February, 1857, before the writ was served. That on the 27th of April, 1857, administration was granted; and this suit was brought on the 12th of February, 1858, in sixteen days after the expiration of the nine months during which the institution of suits against the administrators was prohibited.

It is clear that the first suit against the deceased, James Crane, was commenced in compliance with the statute, so as to stop the running of the limitation. The first step taken by the plaintiff in the institution of a suit, whether the issuance of the writ, or the filing of the declaration or bill in chancery, is the commencement

of the suit, so as to stop the running of the statute. Angell on Limitations, chap. 50, 334, 337; *Bacon* v. *Gardner*, 23 Miss. 60; *Allen* v. *Mandeville*, 26 Ib. 397.

So our statute evidently alluded to the filing of the declaration or the issuance of the writ, as the commencement of the suit. Hutch. Code, 835, § 19.

It is equally clear that the first suit could not be revived against the administrators of Crane. In *Allen* v. *Mandeville*, 26 Miss. (4 Cush.) 397, this court construed our statute authorizing the revival of "any suit or action depending" at the death of either party, as applying only to cases where the writ had been served, without which, it is said, there is no "*lis pendens*" between the parties.

Then the question is, whether a party who has brought his suit in time, but has been unable to get his writ served, is deprived of all remedy? We think not.

In the first place, executors and administrators are made liable to be sued in any court of law or equity in any action (except for slander and torts to the person) which might have been maintained against the deceased. Hutch. Code, 670, § 111.

And by section 119, of the same act, p. 672, it is very emphatically declared that "all actions which have been commenced and prosecuted for or against any testator or intestate (except actions of slander, and for injuries or torts done to the person), shall and are hereby declared to survive for and against executors and administrators, with the same effect that they might or could have been had or maintained for or against the testator or intestate; any law, usage, or custom to the contrary in anywise notwithstanding."

This section declares that a suit "commenced" (not "depending"), shall survive with the same effect as if the defendant had not died, and it survives against his executors and administrators. But a suit "commenced," although it has the effect above given to it, cannot be revived under section 47, p. 841, because it is not a suit "depending," the writ not having been served, and the *scire facias* therefore not extending to it. The revival of suits by *scire facias* is matter of statutory regulation, and our statute does not cover this case.

But the 119th section expressly declares that suits situated as this is, shall survive against the administrators with the same effect

Crane et al. *v.* French, Admr.

that it might have had against the deceased. This section confers and secures substantial rights. It is highly remedial, and must therefore be liberally and beneficially expounded. It must not be rejected or annulled by construction. If our case is not within the statutes of revivor, or if there is no statute prescribing our remedy, we are not therefore without relief. We resort to the common law, and there we find an adequate and familiar remedy adapted to just such cases, to which the revivor by *scire facias* does not extend.

"It is a well-settled rule of the common law, that where an abatement of a suit happens without any fault imputable to the plaintiff, he is permitted to sue out a fresh writ by journeys accounts, which is quasi a continuance of the first writ, and placeth him in the situation in which he would be, supposing that he were still proceeding on that writ; for the defendant can avail himself of no matter, which ariseth subsequent to the time of the first writ, and could not have been pleaded to it." 1 Bac. Ab. tit. Abatement, p. 30.

This mode of continuing the first suit is sustained by numerous authorities, the conditions being, that the suit shall be by the same plaintiff for the same cause of action, and instituted recently after the abatement of the first writ. *Spencer's case*, 6 Coke R. 10 (Abridg. 189); *Elstobb* v. *Thoroughgood*, 1 Salk. 393; Ib. 1 Lord Raymond, 283; *Kinsey* v. *Hayward*, 1 Lord Raymond, 432, (Leading Case); *Wilcox* v. *Huggins*, 2 Strange, 907; 12 Modern, 568; Cro. Car. 294.

Modern authorities on the subject are not frequent, because the statutes of revival are generally held to cover all such cases.

This rule applies to our statutes, and furnishes the remedy in all cases that cannot be revived by the *scire facias*, just as it did, and still does, by the common law.

But besides this, it is the settled construction of the statute of James I, that if a suit be brought within the six years, and be afterwards abated by the death of another party, a new action may be brought, though the period of limitation has expired, and one year is allowed for that purpose, by analogy to the fourth section. *Kinsey* v. *Hayward*, 1 Ld. Raymd. 434; Ang. on Lim. 28, §§ 13, 14, 15, et al.; *Schermerhorn* v. *Schermerhorn*, 5 Wend. 513; *Huntingdon* v. *Brinkerhoff*, 10 Wend. 278; *Barker* v. *Millard*,

16 Ib. 572; *Richards* v. *Maryland Ins. Co.* 8 Cranch, 84; *Brown* v. *Putney*, 7 Wash. (Va.) 302.

In the case of *Ingraham & Read* v. *Regan*, 23 Miss. (1 Cushm.) 213, it was admitted that the same construction ought to be given to the 14th section of our Act of 1822, " unless very strong reasons existed to warrant a departure therefrom" (p. 227); and the court decided the case on the assumption that such construction did apply to our statute, but distinguished that case from its operation. The same exceptions continue to be embraced in our law. Rev. Code, 401, Art. 19.

On either ground, the first replication was good, and the demurrer to it was properly overruled.

But if the first replication was an insufficient answer to the plea, the judgment nevertheless ought not to be reversed, because the second replication was a good answer to the plea, and ought to have been allowed as such, though the demurrer to it was sustained. The court will look at the entire record, to see whether, on the whole case, the judgment was right.

This replication sets out that Crane, in his lifetime, in consideration that Roberts would refrain from bringing suit on the note, as he was about to do, undertook and promised said Roberts that the Statute of Limitations should not run on said note until it should be fully paid; and that Roberts, confiding in the promise, did not sue. This was not an ordinary renewal of a debt by a new promise, running only for six years, and then itself barred by the same statute; but it is an agreement, upon adequate consideration, never to set up or plead the statute against that note. The statute is not to run until the note is fully paid.

That such a promise may be pleaded as an estoppel, see 2 Smith's Lead. Cas. 454, 466, 467; 1 Greenl. Ev. §§ 27, 207; *Land* v. *Lacoste*, 5 How. 479; *Hamer* v. *Johnson*, Ib. 698; *Dickson* v. *Green*, 24 Miss. 618; *Nixon* v. *Carco*, 28 Ib. 431; *Sugg* v. *Thrasher*, 30 Miss. 135.

. The only answer to this is a quotation from 1 Bouvier's Inst. 38, to the effect that a party cannot renounce the right to plead the Statute of Limitations, until his right to plead it has been acquired.

No authority is quoted for such a doctrine, and it is opposed to

the whole current of decision, and to every day's experience in our courts.

It is a settled maxim, " *Quilibet potest renunciare juri pro se introducta,*" Broom's Maxims, 309; and the Statute of Limitations, is expressly put as an example of a right which a party may renounce.

However sound the policy on which the statute is founded, a party may plead it or not as he chooses, and the whole doctrine, of which the books are so full, that a part payment, or a new promise, or acknowledgment, is a waiver of the defence, and a valid and binding renewal of the cause of action, shows demonstratively that the right to plead the statute may be renounced, whether before or after the bar has accrued.

If the second replication was good, the judgment ought to be affirmed, although it was disregarded by the court below.

HANDY, J., delivered the opinion of the court.

This action was brought by the defendants in error, by declaration filed, and writ of *capias ad respond.*, issued on the 12th February, 1858, against the plaintiffs in error, as administrators of James Crane, deceased, to recover on a promissory note made by the intestate. The declaration sets forth the note as bearing date the 27th May, 1842, and as due, on its face, on the 1st day of December, 1844; and alleges a subsequent promise, on the 1st December, 1850, by the intestate, to pay the money therein; to which two pleas were filed. 1st. *Non assumpsit*, by the intestate. 2d. *Non assumpsit infra sex annos.* To this second plea, the plaintiff filed two replications, under the statute. 1st. That on the 1st December, 1850, the intestate Crane undertook and promised Roberts, the payee of the note, to pay the sum of money therein specified; and that afterwards, in the lifetime of Crane, on the 1st November, 1856, the plaintiff in this action instituted suit in the same court on said note, by filing his declaration, and causing a *capias* to be issued on the 1st November, 1856, and placed in the sheriff's hands; which was returned by the sheriff, not found in his county, averring that Crane died on the 1st February, 1857, before the return of said writ, and that the suit thereby abated, and the plaintiff was thereby prevented from further prose-

cuting the same; that letters of administration on his estate were granted to the defendants on the 27th April, 1857; and that recently, after the expiration of nine months from the grant of administration, the plaintiff instituted the present suit, with intent to prosecute the same in continuation of his former suit, so as aforesaid abated.

2d. That on the 1st December, 1850, and within six years from the time when the cause of action had accrued on said note, Crane, in consideration that Roberts would not sue him on said note at that time, as said Roberts was about to do, undertook and promised said Roberts, that the Statute of Limitations should not run on said note, until it should be fully paid; and that Roberts, relying on said promise, did not sue upon said note, and that the same has not been paid, and setting up his promise as an estoppel.

The defendants demurred to these replications; and the court extended the demurrer back to the second plea, and held the same to be insufficient. And thereupon, by leave of the court, the defendants filed a plea of *actio non accrevit infra sex annos,* in lieu of the second plea; and to that the plaintiff filed replications of the same character as those above mentioned, to which the defendants demurred; and the court sustained the demurrer to the second replication, but overruled that to the first replication. And thereupon verdict and judgment were rendered for the plaintiff.

The first error assigned is, the judgment of the court holding the plea of *non assumpsit infra sex annos* insufficient. It is not material to the merits of this case to determine this question; inasmuch as another plea was allowed to be filed, setting up the same defence embraced in this plea, and upon which the case was tried, giving the defendants the benefit of the defence set up in the original plea as fully as if the case had been tried upon it. Under such circumstances, though the plea were technically sufficient, the overruling of it would be no just ground for reversing the final judgment; for no prejudice is thereby done to the defendants.

But the ground of error mainly insisted on is, the judgment overruling the demurrer to the amended plea of the Statute of Limitations.

That replication in substance is, that on the 1st December, 1850, Crane made a new promise to pay the note, and that within six

Crane et al. *v.* French, Admr.

years from that date, the plaintiffs instituted suit on it, on the 1st November, 1856, by filing their declaration and causing a writ of summons to be issued to the sheriff, which was returned "not found;" and that Crane died, without service of the writ, on the 1st February, 1857, whereby the suit abated; and that administration having been granted to the defendants on his estate, on the 27th April, 1857, the plaintiff brought this action against them on the 12th February, 1858, shortly after the expiration of nine months from the grant of letters of administration.

This replication presents two questions for consideration : 1st. Whether the period from the institution of the suit of 1st November, 1856, to the time it abated, on the 1st February, 1857, is to be deducted from the time of the running of the statute, regarding that suit as distinct from the present action; and 2d. Whether that action can be considered as so connected with the present suit as to be the basis of it, and to make this suit a continuation of that.

Upon the first point, there is scarcely room for question. If the former suit be distinct from the present, it terminated when it abated. It answered no substantial purpose in law ; and when it ceased by abatement, it could have no more effect upon the rights of the parties in this suit, than if it had never been instituted. Therefore, when this suit was commenced, if the former action be considered as distinct from it and at an end, the right of defence, on the ground of the Statute of Limitations, was wholly unaffected by the institution of that suit ; for such right of defence applies to the particular action to which it may be set up.

But is the present action to be considered as a continuation of that for any legal purpose ? It is insisted, in behalf of the defendant in error, that it must be, on several grounds.

First. It is contended that the former action was legally "*commenced* and prosecuted," by filing a declaration and issuing a summons for the defendants ; and, therefore, that it survived after the death of Crane, and was continued in law as the basis of this action, in virtue of the statute, Hutch. Code, 672, § 119, which provides, that "all actions which have been commenced and prosecuted for or against any testator or intestate (except actions of slander and for injuries or torts done to the person), shall and are hereby declared to survive for and against executors and administrators, with

the same effect that they might or could have been had or maintained for or against the testator or intestate; any law, usage, or custom to the contrary in anywise notwithstanding." This section, it is said, contemplates a·different state of case from § 47, Hutch. Code, 841, which provides, that where any suit shall be *depending*, and either of the parties shall die before final judgment, the executor or administrator of such deceased party shall have power to prosecute or·defend the suit, and that *scire facias* may issue to bring in such representative; that the former section applies to suits " commenced," but upon which no process has been served upon the defendant, and provides that such suit shall " survive" against the executor or administrator of the defendant who dies after its institution; but that the latter applies to suits in which process has been served on the defendant, who subsequently dies, which suits are, by service of process, " depending."

But we do not consider this a correct view of the statute. The two statutes are found in different parts of the Code; the former in that treating of deceased persons' estates, and the latter in that treating of process. They both relate to actions that survive the death of parties to them, and make provisions to prevent their abatement. The object of the former is, to declare *what actions shall not abate*, but shall survive to or against the representatives of parties to them, who may die after their commencement; and that is appropriate to the division of the statutes treating of deceased persons' estates. But the object of the latter is, to make provision *for the process* by which such representatives may be made parties, which is the subject-matter there treated of; and in doing so, it makes reference to and repeats the previous provision in relation to the cases in which the action should survive. This was proper and necessary in providing for the process by which the right to revive the suit was to be effected. In short, the former section provides *what actions* shall survive; and the latter provides *the mode* in which the same actions shall be revived. But they both plainly refer to actions in the same condition, the former designating them as " actions commenced and prosecuted," and the latter as " actions depending," and both meaning, actions wherein the deceased party had been brought under the jurisdiction of the court, so that the suit would not entirely abate upon his death.

In this case, there is nothing in the record showing that the present suit was intended to be a continuation of the former one, or to have any connection with it as a suit. The former suit was abated and discontinued, and the present action was brought by filing a new declaration and issuing new process thereon, making no reference whatever to the preceding suit. If it had been competent to engraft it upon the preceding suit so as to make it a continuation of that suit in law, which it is clear could not be done, it is manifest that it was instituted as a distinct suit, and cannot be aided by the fact that the preceding suit had been instituted.

Much stress is laid by the counsel for the defendant in error, in support of the position under consideration, upon the words of the 119th section, that "*the action should survive* for and against executors and administrators, with *the same effect that it might* or could have been had or maintained *for or against the testator or intestate.*" And it is insisted that the effect of this provision is to continue the suit, for all substantial legal purposes, against the representative, as it would have been against the deceased, had he continued in life. But we do not agree with this view. The spirit of the provision is that, *in cases in which the action would survive,* it should do so against the representative *with the same effect* that it might have been maintained against the deceased. It certainly was not intended that a suit which was abated and discontinued should still be considered as a subsisting action for any legal purpose; or that it should be the basis upon which a new action against the representative of the deceased should be instituted. On the contrary, taking into view all the provisions of the statutes upon the subject, it is clear that a suit against a deceased party cannot be considered as continued for any legal purpose, unless it be a case which, under the provisions of the statute, may be revived against his representative.

It is further said, that this cannot be the construction of the 119th section, because the previous section 111, had already provided for the revivor of suits, by or against any executor or administrator, in cases where the action might have been brought by or against the deceased. But section 111 has no reference to suits commenced by or against a party in his lifetime; and it makes no provision for the revivor of such suits, in case of the death of

the party, by or against his representatives. Its object is to give to an executor or administrator the right to institute and prosecute or defend any action, with certain specified exceptions, which the deceased might have instituted or defended, if alive; and this is the entire scope of the section.

Secondly. It is contended that the former suit is to be considered as continued in law in aid of the present action, under the rule of *journeys accounts*, at the common law; by which, when an abatement of a suit happened without any fault imputable to the plaintiff, he was permitted to sue out a fresh writ by *journeys accounts;* which is *quasi* a continuance of the first writ, and places him in the situation in which he would be, supposing that he were still proceeding on that writ. 1 Bac. Abr. Abatement Q.

If this artificial rule of the common law was at all applicable to our system of jurisprudence, it is clear that it would not sustain the present action; because this suit does not purport to be brought *by journeys accounts*, which is held to be necessary in order to maintain an action on that ground. *Kinsey* v. *Hayward*, 1 Ld. Raymond, 433. It is a distinct and independent suit. But it is plain that this doctrine has no application to our system of jurisprudence, as is manifest by the reasons upon which it was founded at common law. 1 Ld. Raymond, 433.

When a suit is abated, and discontinued, and out of court, under our laws, it is at an end, for all legal purposes, except where it is provided by our statutes that it may be further continued, or that further legal steps may be taken upon it. A new and distinct suit must stand upon its own merits, and can derive no aid to support it from a prior suit, which has been terminated and is dismissed from the court. This rule of practice is believed to be without exception, and is repugnant to the antiquated rule of the common law referred to. But especially is not this rule of the common law, to be sanctioned with reference to defences to actions upon the ground of the Statute of Limitations; for it would have the effect to engraft an exception upon the statute, not only not enumerated in it, but in violation of its positive provision, that cumulative and additional disabilities should not be allowed to persons for whose benefit the savings in the statute were inserted. Hutch. Code, 832, § 17.

Thirdly. It is insisted that this case is within the equitable

exception which has been extended, in England, to a suit brought within twelve months after the abatement of a former suit by the death of the plaintiff, applying the saving of one year within which to bring a new suit after *arrest or reversal of a judgment*, to the case of a *suit abated* by the plaintiff's death. This rule is founded, in England and in the courts of this country, which have followed it, upon the principle that the case of an abatement was within the equity of the statute. But it has been wholly rejected in this court, and the rule is firmly established, as the settled doctrine here, that no equitable exceptions are to be engrafted upon the statute, and that where there is not an express exception, the court cannot create one. *Robertson* v. *Alford*, 13 S. & M. 510; *Butler* v. *Craig*, 27 Miss. 629; *Ingraham & Read* v. *Ryan*, 23 Ib. 213.

This point is not affected by the provision of the Rev. Code, 401, Art. 19, extending the privilege contained in the prior statute to an *action abated*, as the time allowed for bringing the new action, after the abatement of the former suit had transpired before this suit was brought. And by the terms of that act, this case is not within its provisions.

It follows from these views, that the first replication was insufficient, and that the demurrer to it should have been sustained.

But it is insisted, nevertheless, that the judgment upon the whole record is correct, because the second replication was a sufficient answer to the plea, and should have been sustained; and that the court will look to the whole record, and not reverse the judgment for the error in sustaining the first replication, if the second replication shows a good answer to the plea, and should have been so adjudged. The rule of practice is doubtless as stated; and if upon the whole record the judgment is correct, it will not be reversed because the judgment was placed on a particular ground which is not sufficient to sustain it.

The question presented by this replication is, whether the defendants are estopped by the promise of their intestate, that the Statute of Limitations should not run on the note. It appears that this agreement was founded on the consideration that the holder of the note would not then bring suit on it, which was complied with

on his part, and that the agreement was made before the bar had attached to the note, but after its maturity.

If this agreement be regarded as a new promise to pay the debt, as it is treated in the declaration and first replication, there appears to be no doubt of its validity in that respect; and that it had the effect to extend the time of payment of the note to the period of six years from the date of the promise; for new promises are expressly recognized by the Statute of Limitations; and, consequently, it would have been a sufficient answer to a plea of the statute to an action commenced on the note at any time before that period transpired.

But it is insisted, by the plaintiffs in error, that, in its terms as stated in the replication, it is an agreement not to set up the Statute of Limitations as a defence to the note in all time to come, and is against public policy, as declared in our statutes requiring that actions shall be commenced within a limited time, and void. On the contrary, it is insisted that the statute merely confers a right to set up the limitation as a defence, as an individual privilege, and that every man has the right to renounce such a privilege.

In support of this position, a class of cases is referred to by counsel for the defendant in error, holding that a party who waives his right to a third party, and thereby induces that party to acquire a right in the thing, cannot afterwards be heard to gainsay the right which he has been the means of inducing that party to acquire,— such as the maker of a note inducing a third person to purchase it, or a party having an interest in property inducing others, either by silence as to his right, when he knew that the other party was about to purchase the property, or by his positive conduct inducing him to make the purchase. But these cases are not applicable to this case, which presents an agreement made between the parties to the note, and affecting their rights only.

Another principle is also relied on,—that a party may decline to assert a right which the law gives him the power to assert for his individual benefit; he may decline to plead the Statute of Limitations, or to make any other defence of which the law allows him to avail himself. But there appears to be a plain distinction between declining to take advantage of a privilege which the law allows to a party, and binding himself by contract that he will not avail

himself of a right which the law has allowed to him on grounds of public policy. A man may decline to set up the defence of usury, or the Statute of Limitations, or failure of consideration, to an action on a promissory note. But it would scarcely be contended that a stipulation inserted in such a note, that he would never set up such defence, would debar him of the defence, if he thought fit to make it.

Several cases are relied on in behalf of the defendant in error to show that an agreement like this operates by way of estoppel.

In *Utica Insurance Company* v. *Bloodgood*, 4 Wend. 652, the defendant agreed in writing, before the maturity of the note sued on, not to plead the Statute of Limitations to an action on the note. The suit was brought before the expiration of the time the note had to run under the new promise created by that agreement; and it was held that the defendant was estopped by his agreement from availing himself of the Statute of Limitations. The same rule was recognized in the case of *Livingston* v. *Livingston*, 15 Wend. 289, where there was a new promise and action brought before the expiration of the time given by the new promise. In *Randon* v. *Toby*, 11 Howard (S. C. U. S.), 493, there was also an agreement in writing, that the defendant would not take advantage of the Statute of Limitations, and in the same instrument an agreement for an extension of the time of payment; and in an action brought upon the notes to which the agreement referred, before the expiration of the time given by the new promise, it was held that the defendant was precluded from setting up the statute by his agreement. These were all cases where the agreement had the effect of a new promise to pay the debt, and the actions were brought before the expiration of the time embraced by the new promise. It is clear that in each, the new promise prevented the bar from attaching until the expiration of the time to which the new promise extended; and if this decision be placed on that ground, it was properly held that the agreement, as a new promise, estopped the defendant from relying on the bar, until the time to which the new promise extended had elapsed. But no case has been produced of an agreement not to plead the statute, which has been held to conclude the defendant of that right in an action brought after the expiration of the time given under the new agreement. Such an agreement, indeed, appears to

be only coextensive with the new promise; and the same period of limitation which would bar one, would bar the other. This must be true, unless the agreement be considered as an independent and collateral covenant not to plead the statute, which only became broken by making the defence. But so regarded, it appears clearly to be an agreement in violation of public policy; that policy which *requires* suits to be brought in due season, and discourages stale demands, as calculated to promote litigation, and to prejudice the just rights of parties. This policy stands upon the same reason of the public good, as the laws in relation to usury. Suppose, then, an agreement made by the maker of a note that he would not set up the defence of usury. Would an action lie for a breach of that agreement, in case the party should make the defence in disregard of it? It appears not; and the reason is, that the right to make the defence is not only a private right to the individual, but it is founded on public policy, which is promoted by his making the defence, and contravened by his refusal to make it. The same principle is applicable to the policy of Statutes of Limitations; and with regard to all such matters of public policy, it would seem that no man can bind himself *by estoppel* not to assert a right which the law gives him on reasons of public policy.

If this agreement, then, be considered as a contract not to plead the Statute of Limitations to an action upon the note in all time to come, we think it in violation of the policy of the law, and void. And hence, the judgment on the demurrer to the second replication was correct.

The judgment is reversed, the demurrer to the first replication to the amended plea sustained, and judgment here for the plaintiffs in error.

SMITH, C. J., dissented in relation to the validity of the second replication.

NOTE.—For a full discussion of the doctrine of Journeys Accounts, see *Davies* v. *Lowndes*, 49 E. C. L. R. 762, and authorities there cited.