## MILLS *v.* BENNETT.

*(Jackson.*    April  18,  1895.)

1. EXEMPTIONS.    *Waiver of.*

A person contracting a debt cannot, by a contemporaneous and simple waiver of benefit of the exemption laws, confer upon his creditor the right, upon obtaining judgment for his debt, to levy his execution, over the debtor's objection, upon exempt property.   Such agreement is contrary to public policy and void.   (*Post, pp. 651–657.*)

Cases cited and approved : 10 Bush, 156 (S. C., 19 Am. Rep., 61) ; 82 Ill., 147 (S. C., 25 Am. Rep., 301) ; 22 N. Y., 240 (S. C., 78 Am. Dec., 186) ; 20 Iowa, 376 ; 15 La. An., 245 ; 20 Fla., 558 (S. C., 51 Am. Rep., 618) ; 8 How. Pr., 547.

Cited and distinguished : Denny *v.* White, 2 Cold., 283 ; Cox *v.* Ballentine, 1 Bax., 362 ; Cronan *v.* Honor, 10 Heis., 534 ; 60 Ala., 313.

2. SAME.    *Same.*

And such waiver is equally ineffectual whether made by the head of a family or by a single person entitled to exemptions (*Post, p. 657.*)

---

FROM SHELBY.

---

Appeal  in  error  from  Second  Circuit  Court  of Shelby  County.    J.  S.  GALLOWAY,  J.

B.  F.  BOOTH  for  Mills.

M.  D.  FLEMING  for  Bennett.

MCALISTER, J.    The  only  question  presented  for determination  in  this  cause  is  whether  a  debtor  may

waive his exemptions for the benefit of his creditor. The stipulation for a waiver of exemptions was incorporated in the following note, viz.:

"MEMPHIS, TENN., August 23, 1894.

"Thirty days after date I promise to pay to the order of G. M. Anderson five dollars. I do hereby agree to waive my rights to exemption under the laws of the State of Tennessee until the bill is paid in full. Value received.        H. H. BENNETT."

"Witness: J. M. SIMMS,

"WM. H. MILLS."

Indorsed: "I do hereby transfer the within note to W. H. Mills.        G. M. ANDERSON."

The defendant, Bennett, is a daily laborer in the employment of Stewart, Gwynne & Co., a mercantile firm in the city of Memphis. The creditor is seeking, by these proceedings, to subject to the payment of his judgment wages due Bennett, which are exempt by law from execution, seizure, or attachment. Code, § 2931.

It appears from the record that Bennett is the head of a family, with a wife and three children. This consideration, however, is immaterial, since it is not necessary, in order to entitle the defendant to this particular exemption, that he should have been the head of a family. Of course this fact only emphasizes the necessity for such exemption, but it is not material as a matter of law. There are other exemptions which are dependent upon this con-

dition, and the validity of contracts entered into by the head of the family is considered from this point of view. It will be observed that the defendant in this case, upon the face of the note, waives all his exemptions—those secured to him as the head of a family and those which he is entitled to independently of the family. Is such a contract valid and enforcible? It was held in the case of *Denny* v. *White*, 2 Cold., 283, "that the property exempt from execution in the possession of the head of a family is held by him for the use and benefit of the family; and while he has the right to sell or exchange such property, it cannot be levied on and sold on execution by his consent, this being a privilege he cannot waive." Said the Court, viz. : "The language of the Act is imperative. The property exempt shall not be liable to seizure and sale by execution, and the head of the family cannot waive the right, as those dependent on him are under the protection of the law, and secured in the enjoyment of the property."

In the case of *Cox* v. *Ballentine*, 1 Bax., 362, it was held that "the head of the family has the right to sell, exchange or mortgage the exempt property, and the Legislature has no power to prohibit him." See, also, *Cronan* v. *Honor*, 10 Heis., 534. It is suggested that these cases are somewhat contradictory and perhaps irreconcilable. The conflict, we think, is more apparent than real.

"There is an essential difference," says the Su-

preme Court of Kentucky, "between an executed con-
tract, by which the owner is divested of title, and an
executory agreement, by which the debtor merely
promises that, in the future, he will not take advan-
tage of or claim the benefit of a particular statute.
*  *  *  The law, in its wisdom, for the protection of
the poor and needy, has said that certain property
shall not be liable for debt, not so much to relieve
the debtor as to protect his family against such im-
provident acts on his part as would reduce them to
want.  *  *  *  If such a contract is upheld, the ex-
emption laws of the State would be virtually obsolete
and the destitute deprived of all claim they have to
its beneficent provisions." _Moxley_ v. _Ragan_, 10
Bush, 156 (S. C., 19 Am. Rep., 61).

Says the Supreme Court of Illinois: "That such
a waiver, where the same is attempted to be made
by an executory contract, is ineffectual and will not
be enforced, is definitely settled.  *  *  *  Such con-
tracts contravene the policy of the law, and hence
are inoperative and void.  The owner may, if he
choose, sell or otherwise dispose of any property he
may have, however much his family may need it,
but the law will not aid in that regard, nor per-
mit him to contract, in advance, that his creditors
may use the process of the Courts to deprive his
family of its use and benefit, when an exemption
has been created in their favor.  Laws enacted from
considerations of public concern and to subserve the
general welfare, cannot be abrogated by mere pri-

vate agreement." *Recht* v. *Kelly*, 82 Ill., 147 (S. C., 25 Am. Rep., 301).

Says Judge Denio: "The maxim, '*modus et conventio vincunt legem*,' is not of universal application. It applies only to agreements in themselves legal. Where no rule of law or principle of public policy is concerned, the parties may, by contract, make a law for themselves. One object of municipal law is to promote the general welfare of society. The exemption laws seek to accomplish this by taking from the head of the family the power to deprive it of certain property by contracting debts which shall enable the creditors to take such property on execution." The parties to this contract sought to set aside those laws so far as this debt was concerned. This they could not do. The learned Judge says: "I am of opinion that a person contracting a debt cannot agree with the creditor that, in case of nonpayment, he shall be entitled to levy his execution upon property exempt from execution by the general laws of the State. * * * If effect shall be given to such provisions, it is likely that they will be generally inserted in obligations for small demands, and, in that way, the policy of the law will be completely overthrown. Every honest man who contracts a debt, expects to pay it, and believes he will be able to do so without having his property sold on execution. No one worthy to be trusted would, therefore, be apt to object to a clause subjecting all his property to levy on execution in case

of nonpayment. It was against the consequences of this overconfidence and the readiness of men to make contracts which may deprive them and their families of articles indispensable to their comfort, that the Legislature has undertaken to interpose. When a man's last cow is taken on an execution on a judgment rendered upon one of these notes, it is not sufficient to say that it was done pursuant to his consent, freely given when he contracted the debt. The law was designed to protect him against his own improvidence in giving such consent. The statutes contain many examples of legislation based upon the same motives. The laws against usury, those which forbid imprisonment for debt, and those which allow a redemption after the sale of land on execution, are of this class." *Kneettle* v. *Newcomb*, 22 N. Y., 240 (S. C., 78 Am. Dec., 186).

The Supreme Court of Iowa, after a full consideration of the subject, said, viz.: "Without pursuing the discussion of the subject further, we are agreed in the conclusion that a person contracting a debt cannot, by a contemporaneous and simple waiver of benefit of the exemption laws, entitle the creditor, in case of failure to pay, to levy his execution, against the defendant's objection, upon exempt property. Such an agreement is contrary to public policy, and will not be enforced. *Curtis* v. *O'Brien*, 20 Iowa, 376.

In the case of *Branch* v. *Tomlinson*, 77 N. C., 388, a similar waiver, incorporated in a promissory

note, was attempted to be enforced. The Court said: "The agreement is to waive a right in contravention of State policy, which agreement this Court cannot undertake to enforce."

In *Levicks* v. *Walker*, 15 La. An., 245, a similar conclusion was reached.

The Supreme Court of Florida, in *Carter* v. *Carter*, 20 Florida, 558 (S. C., 51 Am. Rep., 618), in a most able and elaborate opinion, held, viz.: "In view of the recognized policy of the States in enacting exemption laws, and of the practically universal concurrence of the authorities on the identical question, our conclusion is that the waiver of the benefit and protection of the exemption laws contained in this note is not valid to defeat a claim of exemption." See, also, *Crawford* v. *Lockwood*, 8 How. Pr., 547.

The result of our examination is that the main current of judicial enunciation is against the validity of such contracts. Possibly the only Court out of line is that of Pennsylvania. Such contracts are also sustained in Alabama, but under the authority of an express statute. *Brown* v. *Leitch*, 60 Ala., 313. We think the weight of reason as well as authority is opposed to such stipulations. In our view, it is immaterial whether the contract is made by a single man or the head of a family. In either case it contravenes a sound public policy, and, if enforced, abrogates the exemption statutes.

The judgment is affirmed.