CASE 75—PETITION ORDINARY—DECEMBER 20.

# Wright v. Gardner.

APPEAL FROM GRAVES CIRCUIT COURT.

1. CONTRACT AGAINST PUBLIC POLICY—EXTENSION OF PERIOD OF LIMITATION.—A contract in reference to a matter of public concern whereby the parties agree in advance to extend the period of limitation fixed by the statute, is void as against public policy.

   A contract between buyers and sellers of tobacco in the public market, agreeing in advance to extend the time within which a claim for reclamation may be made beyond that fixed by section 4805, Kentucky Statutes, is void. And where a contract was made between the buyers and the inspector, whereby the inspector agreed to make good any loss to them by reason of a difference between samples drawn by him and the tobacco sold, the sellers agreeing to save the inspector harmless, the inspector having made good such a loss upon demand made after the expiration of the time fixed by the statute, he can not recover of the sellers, although the claim for reclamation was made within the time allowed by the contract.

2. SAME.—Where one has paid out money for another under a contract made in violation of a statute, he having participated in the illegal transaction can not recover the money from the person for whose benefit the payment was made. If the person for whom the payment was made had alone participated in the illegal transaction the case would be different.

ROBERTSON & LEE AND BARBOUR & CARROLL FOR APPELLANT.

1. There is no rule of law which forbids the parties to a contract from extending the period of limitation for a fixed time.

    The case of Shapely v. Abbott, 42 N. Y., 443, distinguished.

2. Whether appellee was or was not legally liable to the purchaser beyond the time fixed by the statute is immaterial. He was, at best, morally responsible and if appellant at his request and for his benefit paid the money he has the right to recover it.

ROBBINS & THOMAS FOR APPELLEE.

1. While parties may, by contract, *limit* the time within which an action may be brought thereon, they can not contract for a longer period of limitation than that fixed by law. (Wood on Limitation, sec. 4, note 2, page 6; *Idem.*, p. 10 and sec. 42; Tiedeman on Limitations of Police Power, sec. 142, p. 522; 13 Am. & Eng. Enc. of Law, pp. 688, 689, 692, 696, 717, 718 and notes thereon; 11 Am. & Eng. Enc. of Law, p. 349; Moxly v. Ragan, 10 Bush, 159; Hoffert v. Miller, 86 Ky., 576; Allen v. Forman, 16 Ky. Law Rep., 635; 2 May on Insurance, 3d ed., sec. 478; *Idem.*, p. 1109, note 1; *Idem.*, p. 1112, sec. 479; Allen v. Mut. Ins. Co., 33, L. C. Jur., 314, 316; City of London Fire Ins. Co. v. Smith, 15 Can. S. C. R., 69; Bishop on Contracts, ed., 1887, secs. 59, 216, 473, 474, 477; Ray on Contractual Limitations, pp. 6, 78, 80.)

2. The alleged custom with reference to the assessment and payment of reclamations is unreasonable, and, therefore, void.    (1 Bush, 197; Bishop on Contracts, sec. 449.)

3. The statute makes the demand therein mentioned a condition precedent to the "right" to any reclamations whatever. (Ky. Stats., sec. 4805; 13 Am. & Eng. Enc. of Law, pp. 688, 689 and notes.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

It appears from this record that J. A. Wright, appellant, was the duly elected inspector of tobacco for the tobacco warehouses in Mayfield, Graves county, for the year 1893, that as such inspector he entered into two contracts, one with J. T. Wright and others, who were brokers buying tobacco on that market, whereby J. A. Wright undertook to guarantee to the brokers aforesaid that the samples of tobacco drawn and furnished by him should correctly repre-

sent the quality and character of the tobacco in the hogs-
heads from which they were severally drawn, and to further
guarantee that if, upon a second inspection at any regular
market in the United States within six months, or in any for-
eign country within nine months, the tobacco so inspected
was found not to have been fairly represented by the first
samples drawn by appellant, and under which the brokers
respectively purchased any of said tobacco, that then he and
his sureties would make good any loss to said brokers by
reason of such difference between the sample and the to-
bacco sold.

The other contract was made between appellant and R.
H. Gardner and twenty-five other persons, designating them-
selves as dealers in tobacco and as sellers of same on the
Mayfield market, and the sellers undertaking to guarantee
and save harmless the inspector from all reclamations that
might be made upon him by any purchaser of any tobacco
owned by them and sold by the samples drawn and furnished
by said Wright, provided the second inspection made
showed such variance between the first sample drawn and
the tobacco sold, and adding the same provision that the de-
mands for the loss so sustained must be made upon them on
second inspection, if in the United States, within six months;
and, when made in any foreign country, within nine months.

The petition setting out this latter contract, made between
Wright and Gardner and others as sellers of tobacco on the
Mayfield market, says that during the year 1893 appellant
drew and furnished samples from thirty-five hogsheads of
tobacco owned by R. H. Gardner, which were sold on that
market by those samples, and which were purchased by J.
T. Wright; and that upon a second inspection of same made
in a foreign market within the nine months after the first
samples so drawn it was shown that the samples first drawn

by J. A. Wright did not in fact correctly represent the qual-
ity of the tobacco sold by these samples and by the ware-
house companies in said city; and that the loss or damage on
same had been duly assessed, according to the custom pre-
vailing on that market, at the sum of $501.55, in favor of J.
T. Wright, and appellant J. A. Wright says that he there-
upon paid J. T. Wright this sum. Wherefore he demands
same of R. H. Gardner, who refusing to pay; this suit was
brought.

While the petition does not show that this second samp-
ling of the tobacco of defendant Gardner, and demand for
the reclamation, were made more than six months after the
first samples were drawn and after the first sale, yet this
fact, being pleaded by defendant in his answer, was not de-
nied, and so the demurrer to the petition of appellant was
considered with this allegation in the case, and by the plead-
ings taken as an admitted fact.

By chapter 133 of the Kentucky Statutes, article 3,
the legislature undertook to define who should be deemed
public warehousemen for receiving, storing and selling
tobacco in Kentucky.

By chapter 71 of the same statutes it created the
office of inspector for the several public warehouses, and, by
the several provisions of these two chapters, undertook to
prescribe the duties' of the several public warehousemen and
of the inspectors as well; and, among other things, it is pro-
vided, by section 4805, "that claims for reclamation shall be
made in ninety days after sale, unless the tobacco is ex-
ported to foreign countries, then the reclamation must be
made within six months after the sale; and, if not done with-
in said time, the claim shall be barred by limitation."

Thus it will be seen that the time during which J. A.
Wright undertook, in his contract, to be bound for any loss or

damage to the broker or buyer of any tobacco on the Mayfield market, and the time during which the seller of tobacco on this market undertook to save said Wright harmless, by reason of any loss paid by him, was, in both cases, extended beyond the time fixed by the section just quoted, within which such reclamations might be made—the statute fixing ninety days when resampled in the United States, whereas these contracts fixed the limit at six months; and the statute fixing six months as the limit when the second sample is drawn in any foreign country, while the contracts before us extend this time to nine months.

Then the question presented is whether it is lawful for parties, by a contract in reference to a matter of public concern, in advance, to so ignore, set aside, and annul the statutes of limitation, established and fixed by the legislature, in reference to the business and the subject-matter about which they are contracting.

While it is true that the statute of limitation, so declared by the legislature as applicable to the time within which demand must be made for these reclamations, is not mentioned in either contract, yet it is manifest that this extension of time was the material thing about which they were contracting and which they undertook to abrogate or ignore.

This extension of time is undertaken to be supported, upon behalf of appellant, by an allegation that the time fixed by the parties to these two contracts was in accordance with the long established usage and custom of the tobacco trade done by these public warehousemen in the city of Mayfield, and of which all parties had knowledge, both seller, inspector and buyer, and it is argued by appellant's counsel that this longer time than that fixed by the statute was but reasonable and, in fact, demanded by the necessities of said

Wright v. Gardner.

trade, and that the time given by the statute was and is too short.

In effect it is for the parties interested in these contracts to say that, notwithstanding the legislature had established by law a time within which these reclamations must be made, yet said time is too short, and that, though such statutes apply to a public business and were passed to regulate the same, yet we will now, by reason of this custom and by these contracts, establish a different period of limitation of our own.

Of course if this may be done by any combination of sellers of tobacco, the inspector and the buyers of same, on any one of the markets in the State, then it may be done on each and all of the markets, and thus the general law be set at defiance and other laws, established by these several contracting parties, be submitted for the law of the State.

As to this pre-existing custom, claimed to have existed in the tobacco trade on that market before the passage of the statute of limitation in question, it may be said to be axiomatic that no custom can be established or maintained in opposition to an express statute of the legislature; that customs of trade may exist where they do not contravene an express statute, but when the legislature speaks then all pre-existing customs in conflict therewith must cease. Custom prevails in the absence of statute law, not in defiance of it.

In speaking of statutes of limitation Mr. Wood says that while formerly they were not regarded with favor by the courts, "latterly they are considered as beneficial and as resting on principles of sound public policy, and as not to be evaded except by the methods provided therein. Indeed, they are now termed statutes of repose, and are regarded as essential to the security of all men." (Section 4.)

In 13 American and English Encyclopedia of Law, 692, it

is said: "Statutes of limitation are now almost universally regarded as statutes of repose and liberally construed."

In Moxley v. Ragan, 10 Bush, 159, this court said: "The right to plead the statute of limitations is a personal privilege; but will it be insisted that an agreement never to plead the statute is binding? If so, the grocer and merchant, and all others engaged in the business affairs of life, would have only to agree with those who promised to pay, verbally or in writing, that the statute of limitations should never be relied on, * * in order to render nugatory these wholesome laws, enacted for the peace and welfare of society and in accord with an enlightened public policy." And again, same case, speaking of a contract in advance to waive the benefit of all exemption law, as against the debt contracted, the court said: "A contract fraught with such consequences to the family of a debtor is totally at variance with public policy, and therefore void."

It now appears to us that the statutes of limitation declare the public policy of the State, in reference to actions brought, as clearly as the policy of the State is found in its exemption laws in favor of the family of debtors.

In this same case the court quotes a decision by Judge Denio, saying that "the law does not permit its process to be used to accomplish ends which its policy forbids, though the parties may, by a prospective contract, agree to such use."

In Allen v. Froman, 96 Ky. 317, this court said: "It has become legislative policy of this State to fix in every case a limit of time for beginning every action or proceeding for relief."

Mr. Bishop, in his work on Contracts, section 439, says that "the law is to be deemed a part of every contract." And in section 442 he says it is because of this doctrine that the law constitutes a part of every contract, "that no stipu-

lation of parties can cause their rights to flow otherwise than in the channels of the law."

Again, in section 477, he says: "To enforce a contract in direct subversion or evasion of any regulation which the law has made for the general good would be against sound policy."

Again, in section 473, the same author says: "A contract involving any one of the other interests which the law cherishes, though to do what is neither indictable nor prohibited by a statute, termed a contract against public policy (or sound policy), is likewise void."

Again the same author, speaking of the policy of the law, says that this term is properly used to denote that "only in the law's channels can rights, whether of persons or of property, be made to flow." (Section 474.)

It is likewise contended by appellant that the time fixed by the statute law of the State, within which this resampling and this reclamation must be made, is too short. To this claim it is sufficient to answer that this is a question for the legislature to determine, and where it has passed a statute on the subject of limitation it is not within the province of the court to change, alter or modify the same.

It may be further answered that while the time is fixed by the statute within which these reclamations must be made, and this statute is on its face a statute of limitation, yet the real change resulting from said statute is to extend the time during which one selling his produce, or any article of merchandise, by sample, may be held liable, for any defect in the goods not discoverable from the sample by which it has been sold, beyond the time given by the common law.

It will be remembered that by the common law this sale by sample is one character of contract where the law always implies a warranty that the goods shall be equal to the sam-

ple; while ordinarily, in sales of personal property, the policy of the law as to quality of the goods sold is *caveat emptor*—let the purchaser beware. And yet by the common law it was the duty of the purchaser, who had purchased by sample, to immediately examine the goods when delivered, and *to then determine* whether they were up to the sample by which he bought or not; and, if not, he must at once reject the same. And yet, under the statute in this case and in regard to the sale of tobacco in these public warehouses by sample, the owner and vendor is held liable upon the implied warranty of the quality of the tobacco sold for ninety days where resampled in the United States, and for six months where resampled in any foreign country, so that instead of limiting the liability of the owner or vendor who sells by sample it really extends it for a material length of time beyond that allowed by the common law, and to this extent it was a concession to the buyer in thus giving him time even to ship his purchase to foreign countries and to resample same.

When the legislature, regarding the sales of tobacco by public warehousemen in Kentucky of so much importance as to be regulated by law, and when that law has been enacted by the legislature, the same should be regarded and accepted as the established policy of the State in reference to this subject; and when this is so no combination of brokers, inspector and sellers at any warehouse in any city or place where these public warehouses are established by law should be permitted in anywise to contravene that public policy. It is one of general public interest, affecting a large proportion of our population, the annual value of the crops raised and marketed through these public warehouses aggregating many millions of dollars.

In these conditions it is far removed from a contract be-

Wright v. Gardner.

tween two individuals, affecting only their private interests.

Every one who consigns his tobacco to these public ware-housemen for sale may be presumed to know what the public law of the State is in reference to the sale of his tobacco, and he has a right to rely upon this law as fixing both his liability and his exemption; but what can he know of these private contracts between the traders and sellers, the in-spector and the broker or the purchaser, at such public ware-house?

We clearly deem any contract materially changing the law of the State, in reference to these sales, as in contraven-tion of the policy of the law, and, therefore, nonenforceable.

It may be proper to add that we do not mean by anything said herein to intimate that a promise to pay a debt by the debtor, after the same is barred by the statute of limitation, is not good and enforceable. Nor do we mean to intimate that, by reason of the exemption laws of the State, it is not competent for a debtor, at the time of the creation of the debt or afterwards, by special contract with his creditor, to put in pledge or mortgage any specific article of property for the payment of the debt, though exempt by law.

The court below held this contract sued on void, as con-trary to public policy. We think the ruling correct.

Judgment affirmed.

Judge Paynter delivered the following response of the court to a petition for rehearing, May 29, 1896:

It is insisted that there is no reason why the appellant should be compelled to lose the money which he paid for the appellee. The reason is this: That the appellant entered into the contract to pay the reclamations in violation of the statute; that he is presumed to know the parties to whom he attempted to obligate himself could not recover from

him on the contract as they could not have done against the appellee had the contract been entered into by the buyer with the appellee.

The contract which the appellant entered into with the buyer could not have been enforced against the appellant for the reasons which the court gave for refusing to enforce the one on which this suit was brought. The appellant's contract under which he paid the money was as much in violation of the statute as is the one on which he sues. He participitated in the transaction in violation of the statute, and therefore can not be placed in the position of one who may have paid money at the request of a person who alone participated in the acts in violation of the statute.

Petition for rehearing overruled.