[Civil No. 2755.   Filed December 31, 1928.]

[273 Pac. 6.]

WILLIAM FORBACH, Appellant, v. ALBERT STEINFELD, Appellee.

Mr. R. W. Langworthy, for Appellant.

Mr. Charles Blenman, for Appellee.

LOCKWOOD, J.—On March 6th, and May 21st, respectively, in the year 1915, Forbach & Company, a copartnership, of which William Forbach, hereinafter called defendant, was a member, executed certain promissory notes in favor of the Consolidated National Bank of Tucson. The first was due sixty days after date, and the second on demand. Each of these notes contained the following clause:

"The makers and endorsers of this note waive grace, presentment, demand, notice of dishonor, protest and statute of limitations."

On October 4, 1915, the bank brought suit in the Superior Court of Pinal county against defendant and others for the collection of these notes, summons being served on Forbach on February 24, 1916. Nothing further was done in regard either to the notes or the suit in Pinal county, until March 3, 1927, when Albert Steinfeld, as assignee of the bank, hereinafter called plaintiff, brought this action on the notes in the Superior Court of Pima county. Forbach pleaded the action still pending in Pinal county in abatement, and plaintiff on July 14, 1927, caused the suit in Pinal county to be dismissed and thereafter proceeded to judgment in this action.

The sole question which we have to consider on this appeal is the construction and effect of paragraph 714, Revised Statutes of Arizona of 1913, Civil Code, which reads as follows:

"714. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing, executed within this state, shall be commenced and prosecuted within four years after the cause of action shall have accrued and not afterward."

It is contended by defendant that plaintiff cannot maintain this action for the following reasons: First,

that the statute above quoted cannot be waived in advance for an unlimited time; second, that the agreement to waive the statute was not binding upon defendant because it was not relied or acted upon by plaintiff; and third, that the action originally commenced in Pinal county on said notes was not prosecuted within a reasonable time thereafter, and was therefore barred by the statute of limitations. We consider these alleged errors as seems advisable.

The first proposition presented may be worded as follows: May the maker of an obligation at the same time he executes it and as a part thereof waive the statute of limitations? The authorities are in hopeless conflict upon the point, and this court has never passed on the question. We are at liberty, therefore, to examine the rules adopted by the various states and the reasons therefor, and to follow the one which seems to us best founded on common sense, logic and sound public policy. We will therefore discuss the different rules at some length.

The first rule is that a waiver of the nature found in the present case is valid. The reason back of this rule is well, though succinctly, stated in *State Trust Co.* v. *Sheldon,* 68 Vt. 259, 35 Atl. 177, as follows:

"It is urged that the agreement to waive the statute is void because by private agreement, it seeks to avoid a statute, and is against public policy. The general rule is that no contract or agreement can modify a law, but the exception is that where no principle of public policy is violated, parties are at liberty to forego the protection of the law. Statutory provisions designated for the benefit of individuals may be waived, but, where the enactment is to secure general objects of policy or morals, no consent will render a noncompliance with the statute effectual. *The statute limiting the time within which action shall be brought is for the benefit and repose of individuals, and not to secure general objects of policy or morals.* Its protection may therefore be waived, in legal form,

by those who are entitled to it; and such waiver, when acted upon, becomes an estoppel to plead the statute." (Italics ours.)

The same conclusion is reached in the states of New Jersey and South Carolina. *Quick* v. *Corliss*, 39 N. J. L. 11; *Lowry* v. *Dubose*, 2 Bailey (S. C.) 425.

The second rule is that while any waiver made as a part of the original contract or a subsequent waiver for an unlimited time is invalid, a *subsequent* waiver for a *specific* time is good, the decisions being based on practically the same grounds as those from Vermont and New Jersey, i. e., that the statute is not a declaration of *public policy*, but merely a *personal privilege*. This seems to be the rule in the states of California, Montana, Maine and Missouri. *Wells Fargo* v. *Enright*, 127 Cal. 669, 49 L. R. A. 647, 60 Pac. 439; *State Loan & Trust Co.* v. *Cochran*, 130 Cal. 245, 62 Pac. 466, 600; *Kemper* v. *Industrial Acc. Com.*, 177 Cal. 18, 171 Pac. 426; *Trask* v. *Weeks*, 81 Me. 325, 17 Atl. 162; *Parchen* v. *Chessman*, 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631; *Bridges* v. *Stephens*, 132 Mo. 524, 34 S. W. 555.

The third rule is that a contract to waive the statute of limitations is always void. The leading case holding this doctrine is *Wright* v. *Gardner*, 98 Ky. 454, 33 S. W. 622, 35 S. W. 1116.

"In effect, it is for the parties interested in these contracts to say 'that, notwithstanding the Legislature has established by law a time within which these reclamations must be made, yet that said time is too short, and that though such statutes apply to a public business, and were passed to regulate the same, yet we will now, by reason of this custom and by these contracts, establish a different period of limitation, of our own.' . . . In speaking of statutes of limitation, Mr. Wood says that while, formerly, they were not regarded with favor by the courts, latterly they are considered as beneficial, and as resting on

principles of sound public policy, and as not to be evaded, except by the methods provided therein. Indeed, they are now termed 'statutes of repose,' and are regarded as essential to the security of all men. See section 4. In volume 13, p. 692, Enc. Law, it is said 'that statutes of limitation are now almost universally regarded as statutes of repose, and liberally construed.' In *Moxley* v. *Ragan*, 10 Bush [Ky.], 159 [19 Am. Rep. 61] this court said: 'The right to plead the statute of limitations is a personal privilege, but will it be insisted that an agreement never to plead is binding? If so, the grocer and merchant, and all others engaged in business affairs of life, would have only to agree with those who promise to pay, verbally or in writing, that the statute of limitation should never be relied upon, in order to render nugatory those wholesome laws enacted for the peace and welfare of society, and in accord with an enlightened public policy.' And again (same case), speaking of a contract in advance to waive the benefit of all exemption laws, as against the debt contracted, the court said that 'a contract fraught with such consequences to the family of a debtor is totally at variance with public policy, and therefore void.' It now appears to us that the statute of limitation declared the public policy of the state in reference to action brought as clearly as the policy of the state is found in the exemption laws in favor of the families of debtors. In the same case the court quotes a decision by Judge DENNIS, saying 'that the law does not allow its process to be used to accomplish ends which its policy forbids, though the parties may, by a prospective contract, agree to such use.' In *Allen* v. *Froman* [96 Ky. 313], 28 S. W. 497, this court said: 'It has become the legislative policy of this state to fix in every case a limit of time for the beginning of every action or proceeding for relief.' Mr. Bishop, in his work on Contracts (section 439), says that the law should be deemed a part of every contract; and in section 442 he says, 'It is because of the doctrine that the law constitutes a part of every contract that no stipulation of parties can cause their rights to flow otherwise than in the channels of the law.' Again, in section 447, he says, 'to enforce a contract in direct

subversion or evasion of any regulation which the law has made for the general good would be against sound policy.' Again, in section 473, the same author says, 'A contract involving any of the other interests which the law cherishes, though to do what is neither indictable nor prohibited by statute, is termed a "contract against public policy," and is likewise void.' Again, the same author, speaking of the policy of the law, says 'that this term is properly used to denote that only in the channels defined by the law can rights, whether of person or of property, be made to flow.' Section 474."

To the same general effect are the decisions in the states of Mississippi, Tennessee, Texas, and New York. *Crane* v. *French,* 38 Miss. 503; *Moore* v. *Taylor,* 2 Tenn. Ch. App. 556; *Mills* v. *Bennett,* 94 Tenn. 651, 45 Am. St. Rep. 763, 30 S. W. 748; *Shapley* v. *Abbott,* 42 N. Y. 443, 1 Am. Rep. 548; *Mutual Life Ins. Co.* v. *United States Hotel Co.,* 82 Misc. Rep. 632, 144 N. Y. Supp. 476; *Nunn* v. *Edmiston,* 9 Tex. Civ. App. 562, 29 S. W. 1115; *Young* v. *Sorenson,* (Tex. Civ. App.) 154 S. W. 676.

It will be seen on examining the cases cited that the reasons supporting the first two rules are given as follows: First, that statutes of limitation are not declarations of general public policy, but are personal privileges which may be waived or not as the party to be benefited thereby chooses; and second, that if waived, they create an estoppel by leading the opposite party to rely upon the waiver. The states upholding the third doctrine do so on the ground that statutes of limitation, although they need not be taken advantage of by the defendant in a lawsuit, are nevertheless in their inception and main purpose statutes of repose for the protection of the general public. This theory is well explained in *Crane* v. *French, supra:*

"Another principle is also relied on,—that a party may decline to assert a right which the law gives him

the power to assert for his individual benefit; he may decline to plead the Statute of Limitations, or to make any other defense of which the law allows him to avail himself. But there appears to be a plain distinction between *declining to take advantage* of a privilege which the law allows to a party, and *binding himself by contract* that he will not avail himself of a right which the law has allowed to him on grounds of public policy. A man may decline to set up the defense of usury, or the Statute of Limitations, or failure of consideration, to an action on a promissory note. But it would scarcely be contended that a stipulation inserted in such a note, that he would never set up such defense, would debar him of the defense, if he thought fit to make it. . . .

"Would an action lie for a breach of that agreement, in case the party should make the defense in disregard of it? It appears not. . . . " (Italics ours.)

So, also, in *Shapley* v. *Abbott, supra,* the court said:

"A party may, undoubtedly, without trenching upon public policy, waive the defense of usury, or of the statute of frauds, or of the statute of limitations, by omitting to set up the defense when sued. And he may waive his statute exemption by turning out exempt property when the officer comes with the execution; but no case has occurred to me in which a party can, in advance, *make a valid promise that a statute founded in public policy shall be inoperative.*" (Italics ours.)

The same principle is held to apply to the waiver of a statute granting exemption of property from execution. *Moxley* v. *Ragan,* 10 Bush (Ky.), 159, 19 Am. Rep. 61, wherein the court says:

"Every honest man has a desire to fulfill all his obligations, and such are always willing to comply with the demands of a creditor by giving to the latter any assurance he may exact as an evidence of his intention to pay his debt.

"The law in its wisdom, for the protection of the poor and needy, has said that certain property shall not be liable for debt, not so much to relieve the debtor as to protect his family against such improvident acts on his part as would reduce them to want. *Such is the policy of the law;* and this contract was made not only in disregard of this policy, but to annul the law itself so far as it affected the debt sought to be recovered. . . .

"The stipulations contained in the note vested the appellee with no right to any of the debtor's property, nor can its recitals work an estoppel, as the one party knew, or is presumed to have known, as much of the law with reference to such a contract as the other. The agreement to waive this right is illegal and void; and, as said by DENIO, Justice, in the case of *Kneettle* v. *Newcomb* [31 Barb. (N. Y.) 169], 'the law does not permit its process to be used to accomplish ends which its policy forbids, though the parties may by a prospective contract agree to such use [citing cases].'' (Italics ours.)

On examining the foregoing authorities and the reasons given in support of the respective rules, we think the third is most in consonance with the spirit and purpose of the statute. Statutes of limitation, exemption laws, the right of redemption from a mortgage, and all similar provisions are meant for the protection of the debtor as against the creditor. They are a part of the public policy of modern legislation. The wise man of old has well said, "The borrower is servant to the lender," and the debtor, when he applies to the creditor for favors, is always under a certain amount of moral duress. If the latter has the right to demand a waiver of statutory rights, he will almost certainly do it, and the former generally is in no position to protect himself. For this reason the law, in order to give the debtor effectively the protection which the public policy of the state says is his privilege must deny him the right of binding himself

to surrender it. The true rule is well stated in *Crane* v. *French, supra:*

"The reason is, that the right to make the defense is not only a private right to the individual, but it is founded on public policy, which is promoted by his making the defense, and contravened by his refusal to make it. The same principle is applicable to the policy of Statutes of Limitations; *and with regard to all such matters of public policy, it would seem that no man can bind himself by estoppel not to assert a right which the law gives him on reasons of public policy.*" (Italics ours.)

The debtor may decline, when the issue arises, to take advantage of the statute protecting the homestead and certain personal property from execution, and, as is provided in paragraph 727, Revised Statutes of Arizona of 1913, Civil Code, if he fails to plead the statute of limitations when sued, it will be assumed that he does not desire its protection. He may not, however, bind himself in advance to waive it. Such being the law, let us consider its application to the present case.

The notes in question were due, one sixty days after date, the other on demand. Suit was commenced in the superior court of Pinal county within the period allowed by statute, and, had that suit been prosecuted to effect, this appeal would never have been before us. It appears from the record, however, that notwithstanding the defendant was duly served with process in 1916, the matter was allowed to slumber for 11 years with no action taken. While paragraph 714, *supra,* provides that suits must be "commenced" within four years, it also requires that they shall be "prosecuted" within that time. We think that the two words are not synonymous. Under the statute, not only must the action be commenced within four years, but it must be carried on with reasonable diligence, and we are of the opinion that where plaintiff

has done nothing for eleven years after suit has been filed and the defendant served with process, the suit has not been "prosecuted" within the meaning of the statute. The action in Pima county was not even commenced until 1927, and obviously if the waiver is invalid the statute had run for many years before it was brought.

For the foregoing reasons the judgment of the superior court of Pima county is reversed, and the cause remanded, with instructions to dismiss the action.

ROSS, C. J., and McALISTER, J., concur.