Godfrey L. MUNTER, Trustee,
Plaintiff,

v.

William C. LANKFORD and Mattie L. Lankford, Defendants.

Civ. A. No. 732–53.

United States District Court
District of Columbia.

Feb. 3, 1955.

John C. Keating, Washington, D. C., for plaintiff.

Francis W. Hill, Jr., Washington, D. C., for defendants.

HOLTZOFF, District Judge.

The principal question presented in this case is whether a waiver of the statute of limitations contained in a promissory note, or other written instrument, is enforceable, or is void as contrary to public policy. The case comes before the court on cross-motions for summary judgment.

The complaint consists of two counts. The first count sets forth a claim against the defendants as joint makers of a promissory note for $5,000. The note is dated June 28, 1935, and was due two years after date, i. e., June 28, 1937. This action was brought on February 17, 1953,—almost sixteen years after maturity.

The defendants plead the statute of limitations. The plaintiff responds by relying on the following provision of the note:

"We hereby jointly and severally waive presentment, demand, protest and notice, and the statute of limitations."

The plaintiff contends that the attempted waiver of the statute of limitations is invalid as contrary to public policy.

■ Admittedly, the defense of the statute of limitations may be waived after the cause of action arises, or perhaps even prior to that time, but subsequently to the execution of the instrument on which suit is brought. Whether such a waiver is valid if contained in the contract itself involves an entirely different principle. The question is one of novel impression in this jurisdiction.

The States are divided on this point, although the majority rule is that a waiver of the statute of limitations contained in the original instrument is contrary to public policy and, therefore, void and unenforceable.

Thus, the majority rule prevails in Massachusetts and New York. In National Bond & Investment Co. v. Flaiger, 322 Mass. 431, 434, 77 N.E.2d 772, 773, 1 A.L.R.2d 1442, Lummus, J., stated:

"In Williston, Contracts (Rev.Ed. 1936) § 183, upon consideration of the authorities in many jurisdictions, it is laid down as the 'better view,' and the rule of a majority of jurisdictions, that an agreement contained in the original obligation never to set up the statute of limitations violates the public policy of the statute, and is invalid. We think that that rule represents the law of this Commonwealth, just as it does that of New York and many other States."

This doctrine has also been adopted in Mississippi. Crane v. French, 38 Miss. 503, 532, contains an illuminating discussion of this subject:

"* * * it appears clearly to be an agreement in violation of public policy; that policy which *requires* suits to be brought in due season, and discourages stale demands, as calculated to promote litigation, and to prejudice the just rights of parties. This policy stands upon the same reason of the public good, as the laws in relation to usury. Suppose, then, an agreement made by the maker of a note that he would not set up the defence of usury. Would an action lie for a breach of that agreement, in case the party should make the defence in disregard of it? It appears not; and the reason is, that the right to make the defence is not only a private right to the individual, but it is founded on public policy, which is promoted by his making the defence, and contravened by his refusal to make it. The same principle is applicable to the policy of Statutes of Limitations; and with regard to all such matters of public policy, it would seem that no man can bind himself *by estoppel* not to assert a right which the law gives him on reasons of public policy." (Emphasis original.)

This is likewise the rule in Arizona. Some challenging observations are

632

found in Forbach v. Steinfeld, 34 Ariz. 519, 526, 273 P. 6, 9:

"Statutes of limitation, exemption laws, the right of redemption from a mortgage, and all similar provisions are meant for the protection of the debtor as against the creditor. They are a part of the public policy of modern legislation. The wise man of old has well said, 'The borrower is servant to the lender,' and the debtor, when he applies to the creditor for favors, is always under a certain amount of moral duress. If the latter has the right to demand a waiver of statutory rights, he will almost certainly do it, and the former generally is in no position to protect himself. For this reason the law, in order to give the debtor effectively the protection which the public policy of the state says is his privilege, must deny him the right of binding himself to surrender it."

This is also true of Louisiana. Segond v. Landry, 1 Rob. 335, 336, contains the following comments:

"If at the time of making a contract, parties were permitted to renounce beforehand future prescriptions, these renunciations would be always stipulated, would become a standing and customary clause in every contract, and thus the bene-

ficial effects to society supposed to flow from prescription would be defeated."

■ The basis of the prevailing doctrine is that statutes of limitations are based on public policy. They are statutes of repose and are intended to prevent the revival and enforcement of stale demands against which it may be difficult to defend, because of lapse of time, fading of memory, and possible loss of documents.[1]

On the other hand, in some States, a waiver of the statute of limitations, even if embodied in the original contract, is enforced on the theory that the plea of the statute is a purely personal defense, which may be waived, and that no public interest is involved. This is the rule in New Jersey,[2] Vermont,[3] California,[4] and Montana.[5]

It is cogently argued by counsel for the defendants in this case that if effect were to be given to a waiver of the statute of limitations contained in the contract, such a stipulation would be inserted in every promissory note and similar instrument as a matter of routine. It is urged that money lenders would take advantage of the rule and that stationers would print promissory notes with such a clause included. The result would be an annihilation of the statute.

Counsel for the plaintiff refers to the decisions of the Court of Appeals

[1]. 30 Columbia Law Review 390, summarizes this view as follows:

"* * * most courts either hold or suggest in dicta that a promise not to plead the Statute of Limitations made at the inception of an agreement is void as opposed to public policy. This view seems to be a sound one, as the Statute of Limitations is for the public good as well as to benefit the individual, and to allow two people to contract themselves out of the operation of such a statute would be to open the door to the very abuses which the statute was designed to prevent. The practice of inserting such a provision in all sorts of agreements might become prevalent, and the statute absolutely nullified."

The Wisconsin Law Review, 1951, 725, states:

"The majority view is that waiver agreements made at the time of the original contract are void as against the public policy. The minority notion is that the statute is designed only to protect individual contractors, who may waive the act's protective benefits if they wish."

2. Simpson v. Hudson County National Bank, 141 N.J.Eq. 353, 356, 57 A.2d 473.

3. State Trust Co. v. Sheldon, 68 Vt. 259, 35 A. 177.

4. Brownrigg v. DeFrees, 196 Cal. 534, 541, 238 P. 714.

5. Parchen v. Chessman, 49 Mont. 326, 335, 142 P. 631, 146 P. 469.

for this Circuit in Mann v. Cooper, 2 App.D.C. 226, and Noel v. Baskin, 76 U.S.App.D.C. 332, 131 F.2d 231. These cases, however, are distinguishable and involve a different principle. In each of them the agreement to waive the statute of limitations was not included in the original contract, but was a separate understanding made subsequently. Nevertheless, in the Noel case, supra, the Court of Appeals ruled that the defense of the statute of limitations, even under these circumstances, could not be waived perpetually, but only for a reasonable time, which the court stated would be equivalent to the period of limitations. A *fortiori* it necessarily follows that such a provision contained in the original instrument is not to be permanently binding, but at best effective only for an additional period of limitations,—in this instance, an additional three years.

In the light of the foregoing discussion, this court is of the opinion that a stipulation contained in a written instrument attempting to waive the defense of the statute of limitations permanently as to any breach of the contract that might occur in the future, is void and unenforceable as contrary to public policy.

It is further contended that under any circumstances the defendant should be estopped from pleading the statute of limitations in this case. This argument is untenable, as the elements of an estoppel *in pais* are not present. Such an estoppel, if enforced, would be nothing but a mode of avoiding the principle just discussed.

Under the circumstances, the defendant is entitled to summary judgment on the first count of the complaint.

The second count remains for consideration. It alleges that, "*in the said note* the defendants agreed to reimburse the Estate for all insurance premiums paid by the Estate on a certain life insurance policy". It is averred further that certain insurance premiums had been paid accordingly and demand is made for judgment for the sums so expended. The note is annexed to the complaint.

It is an elementary rule, of course, that if there is a discrepancy between the terms of an instrument annexed to a pleading and its interpretation in the pleading, the former must prevail. The note contains the following provision:

"As security for the payment of this note policy numbered 366647 issued by the New England Mutual Life Insurance Company of Boston, Mass., on the life of William Chester Lankford, one of the makers hereof, for $10,000 has been assigned to the Estate of Herman W. Van Senden, deceased, said assignment embracing the above, and all other indebtedness of William Chester Lankford, that may be due said estate at the date of the maturity of said policy or at the date of its cash surrender, including all payments made by said estate of premiums on said policy and interest thereon at the rate of 6 per cent per annum."

We observe that the foregoing provision extends the security to any payments of premiums that may be made by the payee of the note, but does not create any personal obligation on the part of the makers to reimburse the payee for the premiums so paid, if the security is insufficient. It is obvious that the insurance policy was taken out as additional protection for the payee and, therefore, there seems to be good reason why the makers did not undertake an independent obligation to reimburse the payee for the premiums, but merely extended the security to cover them. In view of these considerations, the second count does not set forth a valid claim, and the defendants are entitled to summary judgment on the second count.

Accordingly, the motion of the defendants for summary judgment on both counts of the complaint is granted. The corresponding motion of the plaintiff is denied.