IN THE

# SUPREME COURT OF THE STATE OF ARIZONA
────────────

CSA 13-101 LOOP, LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY,
*Plaintiff/Appellant,*

*v.*

LOOP 101, LLC, AN ARIZONA LIMITED LIABILITY COMPANY; PAUL S. ANTON
AND VALERIE J. CHRISTIE, HUSBAND AND WIFE; OSCAR E. SWANKY AND
HELEN L. SWANKY, AS CO-TRUSTEES OF THE OSCAR E. SWANKY AND HELEN
L. SWANKY REVOCABLE FAMILY TRUST, CREATED JULY 19, 1997, AS
AMENDED,
*Defendants/Appellees.*
────────────

No. CV-14-0029-PR
Filed December 31, 2014
────────────

Appeal from the Superior Court in Maricopa County
The Honorable John A. Buttrick, Judge (Ret.)
No. CV2009-034774
**AFFIRMED**

Opinion of the Court of Appeals, Division One
233 Ariz. 355, 312 P.3d 1121 (App. 2013)
**VACATED IN PART**
────────────

COUNSEL:

Sean K. McElenney (argued), J. Alex Grimsley, Gregory B. Iannelli, Bryan
Cave LLP, Phoenix, for CSA 13-101 Loop, LLC

Timothy Berg (argued), Carrie Pixler Ryerson, Kevin M. Green, Fennemore
Craig, P.C., Phoenix, for Loop 101, LLC; Paul S. Anton and Valerie J.
Christie; and Oscar E. Swanky and Helen L. Swanky, et al.

Scott B. Cohen, Bradley D. Pack, Engelman Berger, P.C., Phoenix, for
Amicus Curiae Arizona Bankers Association
────────────

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE
CHIEF JUSTICE PELANDER and JUSTICES BERCH, BRUTINEL, and
TIMMER joined.

_____

CHIEF JUSTICE BALES, opinion of the Court:

**¶1**         When a deed of trust secures a promissory note and the trust property is sold at a trustee's sale, A.R.S. § 33-814(A) entitles judgment debtors, including guarantors, to have the fair market value of the property credited against the amount owed on the note.  We hold that parties may not prospectively waive this provision.

**I.**

**¶2**         Loop 101, LLC ("Loop") borrowed $15.6 million from MidFirst Bank in February 2007 to construct an office building.  The promissory note was secured by a deed of trust and payment was guaranteed by four individuals.  The promissory note, deed of trust, and guarantee all expressly waived the fair market value provision of A.R.S. § 33-814(A).

**¶3**         Loop defaulted on the loan in June 2009, and MidFirst began a non-judicial foreclosure under the deed of trust.  At the time, nearly $11.2 million remained outstanding on the loan.  MidFirst assigned its rights under the loan and deed of trust to CSA 13-101 Loop, LLC ("CSA"), which bought the property at a trustee's sale for a credit bid of $6.15 million.  CSA then sued Loop and the guarantors for a deficiency judgment of approximately $5 million plus interest.   Loop and the guarantors

2

counterclaimed against CSA and filed a third-party claim against MidFirst for breach of the implied covenant of good faith and fair dealing.

¶4 CSA and MidFirst moved to dismiss the claims on the ground that Loop and the guarantors had waived their right under A.R.S. § 33-814 to a fair market value determination. The superior court denied the motion, ruling that the parties could not waive this statutory right. After holding an evidentiary hearing, the court found the fair market value of the property to be $12.5 million. On cross-motions for summary judgment, the court ruled that no deficiency existed because the property's fair market value exceeded the amount owed on the note.

¶5 The court of appeals affirmed. *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 233 Ariz. 355, 362 ¶ 24, 312 P.3d 1121, 1128 (App. 2013). We granted review because whether A.R.S. § 33-814(A)'s fair market value provision may be waived is a recurring issue of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

**II.**

¶6 Contract provisions are enforceable unless prohibited by law or otherwise contrary to identifiable public policy. *1800 Ocotillo, LLC v. WLB Group, Inc.*, 219 Ariz. 200, 202 ¶ 7, 196 P.3d 222, 224 (2008). Our law

values the private ordering of commercial relationships and seeks to protect parties' bargained-for expectations. *Id.* at 202 ¶ 8, 196 P.3d at 224. Accordingly, if a contractual term is not specifically prohibited by legislation, courts will uphold the term unless an otherwise identifiable public policy clearly outweighs the interest in the term's enforcement. *Id.*; Restatement (Second) of Contracts § 178.

¶7        Consistent with these principles, we have sometimes observed that waivers of statutory rights may "impliedly" be prohibited. *See Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 268 ¶ 13, 77 P.3d 439, 443 (2003). Our past decisions have also stated that parties may waive statutory rights granted solely for the benefit of individuals, *Holmes v. Graves*, 83 Ariz. 174, 178, 318 P.2d 354, 357 (1957), but rights enacted for the benefit of the public may not be waived, *Elson Dev. Co. v. Ariz. Sav. & Loan Ass'n*, 99 Ariz. 217, 224, 407 P.2d 930, 935 (1965). The key inquiry, however, is whether an identifiable public policy clearly outweighs the interest in enforcing prospective waivers of particular statutory provisions. *See 1800 Ocotillo*, 219 Ariz. at 202 ¶ 8, 196 P.3d at 224; Restatement (Second) of Contracts § 178.

¶8        We discern public policy from our constitution, statutes, and judicial decisions. *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 379, 710 P.2d 1025, 1034 (1985); Restatement (Second) of Contracts § 179.

4

Statutory provisions are examined in light of the overall legislative scheme, including its history and purpose. Restatement (Second) of Contracts § 179 cmt. b. Even when not expressly prohibited, contract terms may be invalidated "if the legislature makes an adequate declaration of public policy which is inconsistent with [them]." *Shadis v. Beal*, 685 F.2d 824, 833-34 (3d Cir. 1982). We therefore turn to the public policy concerns reflected in § 33-814(A) and the deed of trust scheme more generally.

**A.**

**¶9** In 1971, the Arizona Legislature enacted the deed of trust scheme, A.R.S. §§ 33-801 to -821, as an alternative to the often cumbersome mortgage and judicial foreclosure system. *In re Krohn*, 203 Ariz. 205, 208 ¶ 10, 52 P.3d 774, 777 (2002); *see generally,* Gary E. Lawyer, Note, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgage*, 15 Ariz. L. Rev. 194 (1973). A deed of trust allows for the sale of the property at a trustee's sale (often referred to as a non-judicial foreclosure) rather than exclusively through judicial process. A.R.S. § 33-807. Once the trust property is sold pursuant to the trustee's power of sale, the statute limits the lender's right to seek a deficiency judgment against the debtor. Deficiency judgments are barred altogether for most residential properties. A.R.S. § 33-814(G). For other properties, the debtor may credit the fair market value of the trust

property against the amount owed on the debt. A.R.S. § 33-814(A). Similar limits on deficiency judgments exist for debts secured by mortgages. *See* A.R.S. §§ 33-727, 33-729(A).

¶10 A.R.S. § 33-814(A) governs deficiency recovery actions against parties liable on debts secured by deeds of trust. The statute provides, in relevant part:

> In any such action against such a person, the deficiency judgment shall be for an amount equal to the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher.

*Id.*

¶11 The fair market value provision applies equally to guarantors and borrowers. *Id.* Moreover, the statute does not draw distinctions based on the resources or sophistication of the parties, nor does it distinguish between commercial and residential transactions. "[S]o long as the subject properties fit within the statutory definition, the identity of the mortgagor as either a homeowner or developer is irrelevant." *Mid Kan. Fed. Sav. & Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991).

¶12 The fair market value provision, as well as the deed of trust framework generally, accords with Arizona's long-recognized public

policy of protecting debtors. *Cf. Forbach v. Steinfeld*, 34 Ariz. 519, 526-27, 273 P. 6, 9 (1928) (noting that "the public policy of the state" is to maintain important legal protections for debtors). In line with this public policy, Arizona's deed of trust framework streamlines the foreclosure process but maintains protections for borrowers and the public. It does this by protecting against artificially increased deficiency judgments.

¶13 The fair market value provision, unlike the anti-deficiency statutes, does not bar deficiency judgments altogether. *Compare* A.R.S. § 33-814(A) (reducing deficiency by property's fair market value), *with* A.R.S. §§ 33-729(A), 33-814(G) (prohibiting deficiency judgments). But the statutes share a common purpose of protecting borrowers. Section 33-814(A) protects against artificially inflated deficiencies by preventing windfalls resulting from below-market credit bids. The anti-deficiency statutes prevent artificial deficiencies resulting from forced sales and further protect certain borrowers from exposing other assets to the risk of default. *Baker v. Gardner*, 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988). Thus, both the fair market value provision and anti-deficiency protections serve to alleviate the harmful effects of economic recession on borrowers. *Cf. Mid Kan.*, 167 Ariz. at 127, 804 P.2d at 1315 ("As with virtually all anti-deficiency statutes, the Arizona provisions were designed to temper the effects of

economic recession on mortgagors by precluding artificial deficiencies resulting from forced sales.") (internal quotation marks omitted).

**B.**

¶14        We must next decide whether the public policy of preventing artificial deficiencies outweighs the interest in enforcing the waiver provisions here. *See* Restatement (Second) of Contracts § 178. Routine waiver of A.R.S. § 33-814(A) would seriously disrupt the statute's public purpose of preventing artificial deficiencies and protecting borrowers. Consistent with the statute's purpose and the overall statutory scheme, we hold that A.R.S. § 33-814(A)'s fair market value provision cannot be prospectively waived.

¶15        When Loop defaulted on its debt, CSA (or its predecessor in interest, MidFirst Bank) could have obtained a judgment for the entirety of the outstanding debt by suing on the note alone. A.R.S. § 33-722 (mortgagee may elect between action on the debt or foreclosure of the mortgage given to secure it); *Baker*, 160 Ariz. at 106, 770 P.2d at 774 ("[U]nder § 33-722 a creditor can elect to forego [sic] foreclosure and sue on the note in all cases except those involving the mortgages and deeds of trust to which the anti-deficiency statutes apply."). But CSA chose to foreclose and seek recovery under the deed of trust scheme. Because this scheme "is a creature of

statutes," *Krohn*, 203 Ariz. at 208 ¶ 9, 52 P.3d at 777, CSA is limited to the recovery the statutes provide. *See Register v. Coleman*, 130 Ariz. 9, 14, 633 P.2d 418, 423 (1981) ("When a statute creates a right and also creates a remedy for the right created, the remedy thereby given is exclusive."). And because the deed of trust scheme strips borrowers of many of the protections afforded under the mortgage laws, we strictly construe the statutes in favor of borrowers. *Patton v. First Fed. Sav. & Loan Ass'n of Phx.*, 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978).

**¶16**     Unlike some real property statutes, A.R.S. § 33-814(A) is silent as to advance waiver. *Cf.* A.R.S. § 33-729(A) (providing for anti-deficiency protection "notwithstanding any agreement to the contrary"). CSA argues we should read this omission as the legislature's implied endorsement of waiver. *Cf. Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 349 ¶ 15, 248 P.3d 193, 197 (2011) (declining to construe an insurance statute to require a Spanish language form where other statutes explicitly require it). But here the omission cuts both ways, as the legislature also has expressly allowed waiver in other statutes. *See, e.g.*, A.R.S. § 33-819 (allowing parties to waive deed of trust provisions when deed is not given to secure a contract). Because the legislature has sometimes allowed and sometimes prohibited waiver in the deed of trust statutes, the omission of a term

addressing waiver in § 33-814(A) is not conclusive as to the legislature's

intent.

**¶17**        As discussed above, ¶¶ 9 - 13, *supra*, the fair market value

protection of A.R.S. § 33-814(A) furthers the public interest of preventing

artificial deficiencies and protecting borrowers generally. Such deficiencies

harm not only individual debtors but also the regional economy. *Cf.*

*DeBerard Props., Ltd. v. Lim*, 976 P.2d 843, 849 (Cal. 1999) (explaining that a

"key purpose" of California's anti-deficiency law "is to stabilize the state's

economy, to the benefit of all"). This identifiable public policy weighs

heavily against the interest in enforcing the waiver provisions of the

contracts here.

**¶18**        The Restatement (Third) of Property further counsels against

allowing waiver. Section 8.4 provides fair market value protection similar

to that in A.R.S. § 33-814(A):

> If it is determined that the fair market value is greater than the
> foreclosure sale price, the persons against whom recovery of
> the deficiency is sought are entitled to an offset against the
> deficiency in the amount by which the fair market value, less
> the amount of any liens on the real estate that were not
> extinguished by the foreclosure, exceeds the sale price.

Restatement (Third) of Property: Mortgages § 8.4(d). Absent controlling

authority to the contrary, we generally follow the Restatement when it sets

forth sound legal policy. *Krohn*, 203 Ariz. at 210 ¶ 18, 52 P.3d at 779.

**¶19**        Like Arizona's statute, Restatement § 8.4 is silent as to advance waiver of its provisions.  But the comment explains that "[a]ny agreement in or created contemporaneously with the mortgage documents by which any person against whom a deficiency may be sought purports to waive the protection of this section is ineffective."  Restatement (Third) of Property: Mortgages § 8.4 cmt. b.  If advance waiver were permitted, "most mortgage forms would routinely incorporate waiver language and the impact of this section would be significantly weakened."  *Id.* Reporters' Note.  And by barring waivers by both guarantors and borrowers, the Restatement "seeks to ensure that its primary goal of preventing unjust enrichment of the mortgagee is not subverted by the routine exaction of waivers from guarantors and sureties."  *Id.*

**¶20**        CSA argues that the Restatement's prohibition of waiver is inapposite because § 8.4 is modeled after statutes expressly prohibiting waiver.  The Reporters' Note does state that the section is "consistent with" California and Pennsylvania statutes that expressly prohibit waiver.  *Id.* (citing Cal. Civ. Code. § 2953 and 42 Pa. Cons. Stat. § 8103(e)).  We note that Reporters' Notes are not endorsed by the American Law Institute, but instead reflect the views of the Reporter.  *See, e.g.*, American Law Institute, *Capturing the Voice of the American Law Institute: A Handbook for ALI Reporters*

11

*and Those Who Review Their Work* 45 (2005) ("Unlike the Introduction, Introductory Notes, black letter, and Comment (including Illustrations), the Reporter's (or Reporters') Notes are regarded as the work of the Reporter (or Reporters)."). But more importantly, the Reporters' observation that § 8.4 is "consistent with" these statutes does not make the provision rise or fall with the language of those statutes. Rather, the text of § 8.4, like that of A.R.S. § 33-814(A), is silent as to waiver. The comment therefore indicates that § 8.4 bars waiver even without express language to that effect.

¶21 Like the Arizona deed of trust scheme, Restatement § 8.4 seeks to protect against artificially increased deficiencies. And consistent with Arizona law, the Reporters' Note recognizes that allowing waiver would result in lenders routinely exacting this term as a matter of course. *See Forbach*, 34 Ariz. at 526, 273 P. at 9 ("If the [lender] has the right to demand a waiver of statutory rights, he will almost certainly do it, and the [debtor] generally is in no position to protect himself."); *see also Brunsoman v. Scarlett*, 465 N.W.2d 162, 167 (N.D. 1991) ("The rights and defenses granted debtors by the anti-deficiency judgment law would be largely illusory if a prospective creditor could compel a prospective debtor to waive them at the time the mortgage is executed."). Thus, allowing waiver

would seriously disrupt the public purpose of A.R.S. § 33-814(A)'s fair market value protection.

### C.

**¶22** CSA urges us to follow other jurisdictions that have interpreted their fair market value statutes to allow waiver. Most directly on point is *LaSalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837 (5th Cir. 2002), recently endorsed by the Texas Supreme Court in *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014). In *LaSalle Bank*, the Fifth Circuit interpreted a Texas statute that, like Arizona's, provides for a fair market value credit but is silent as to advance waiver. 289 F.3d at 839 - 40 (discussing Tex. Prop. Code Ann. § 51.003). Although the borrower argued that allowing waiver would violate the public policy of protecting borrowers from unfair lending practices, the court held that this concern did not apply to transactions between lenders and guarantors. *Id.* at 841. The court also found dispositive the fact that the Texas Legislature had addressed waiver in other statutes. *Id.* In agreeing with *LaSalle Bank*, the Texas Supreme Court added that it would prohibit waiver of a statutory right only when its legislature clearly proscribes such waivers. *Moayedi*, 438 S.W.3d at 6.

¶23 *LaSalle Bank* and *Moayedi* are distinguishable from this case in material respects. First, unlike the Texas statute, A.R.S. § 33-814(A) applies both to borrowers and guarantors. The public policy of protecting borrowers thus applies with equal force to guarantors and is relevant to our analysis. Second, although our legislature has expressly prohibited waiver in other statutes, it also has expressly allowed it. Neither *LaSalle Bank* nor *Moayedi* addressed whether other Texas statutes expressly allow waiver, but the fact that Arizona statutes do means we cannot draw a determinative inference from the omission in A.R.S. § 33-814(A). Finally, unlike the Texas Supreme Court, we do not require that the legislature "speak clearly" to prohibit waiver, *Moayedi*, 438 S.W.3d at 6, but can instead find that a statute impliedly prohibits it as a matter of public policy.

¶24 Because the identifiable public policy served by A.R.S. § 33-814(A) clearly outweighs the interest in enforcing prospective waiver terms, we hold that such terms are unenforceable. We note, however, that our holding does not preclude a borrower from agreeing, after a non-judicial foreclosure commences, not to seek a fair market value determination. *See* A.R.S. § 33-814(A) ("A written application for determination of the fair market value of the real property *may* be filed . . . .") (emphasis added). Though some statutory rights may not be

waived prospectively, a party may still forgo enforcing them in litigation. *Cf. Forbach*, 34 Ariz. at 527, 273 P. at 9 (distinguishing prospective waiver of statute of limitations from borrower's decision not to raise the defense once the action has commenced).

## III.

¶25        We vacate paragraphs 12 - 24 of the court of appeals' opinion, affirm the superior court's judgment, and award attorney fees to Loop and the guarantors pursuant to A.R.S. § 12-341.01.