IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BMO HARRIS BANK N.A., as successor to M&I MARSHALL and ISLEY
BANK, *Plaintiffs/Appellees*,

*v.*

DOROTHY ESPIAU, an unmarried woman now deceased; THE ESTATE
OF DOROTHY ESPIAU by and through its personal representative
KENNETH ESPIAU, *Defendants/Appellants*.

No. 1 CA-CV 20-0460
FILED 7-13-2021

Appeal from the Superior Court in Yavapai County
No.  V1300CV201880220
The Honorable Debra R. Phelan, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Stinson LLP, Phoenix
By Jeffrey J. Goulder, Michael Vincent
*Counsel for Plaintiffs/Appellees*

The Law Office of Christopher Goodman, Phoenix
By Christopher M. Goodman
*Counsel for Defendants/Appellants*

---

**OPINION**

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        The Estate of Dorothy Espiau ("the Estate") appeals from a judgment awarding BMO Harris Bank N.A. ("BMO") the balance still owed after a trustee's sale of property securing a loan the Estate had allowed to go into default. We conclude that (1) BMO's action was not time-barred under the probate code; (2) the court did not err in determining the fair market value of the property at the time of the sale; and (3) the court did not err in denying the Estate's motion under Arizona Rule of Civil Procedure ("Rule") 60(b) for relief from awarding attorneys' fees. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Dorothy Espiau bought a vacant lot in Sedona in 2005 for $415,000. The purchase was financed by a loan from BMO secured by a deed of trust on the property. Dorothy died in December 2015, and her son, Kenneth Espiau, was appointed the Estate's personal representative. Kenneth did not immediately notify BMO of Dorothy's death and continued to make loan payments on her behalf.

¶3        In May 2017, Kenneth finally informed BMO of Dorothy's death. At a BMO branch, Kenneth gave a banker Dorothy's death certificate and his letter of appointment as personal representative; the banker told Kenneth he would forward the material to the "probate department." BMO then sent a letter to the Estate declaring that BMO had the right to collect the outstanding balance of Dorothy's loan. BMO further requested that the Estate notify BMO how it would satisfy Dorothy's outstanding debt. Nothing in the record shows that Kenneth ever responded to this letter, nor does the Estate contend otherwise. Kenneth continued to pay on the loan until August 2017 but made no further payments after that. In January 2018, BMO sent the Estate a notice of default, and, in June 2018, the property was sold at a trustee's sale to a third party for about $135,000.

¶4        BMO then sued the Estate to recover roughly $157,500 still owing on the loan.  In due course, the parties filed cross motions for summary judgment.  BMO sought judgment against the Estate on all issues, except for the determination of the fair market value of the property pursuant to Arizona Revised Statutes ("A.R.S.") section 33-814(A).  The Estate argued BMO's claim was time-barred under the relevant probate statutes.  Following oral argument, the court granted BMO's partial motion for summary judgment and denied the Estate's motion.

¶5        At the fair market value hearing, BMO's expert, Dennis Lopez, opined that the lot's value was $220,000, while the Estate's expert, William Dominick, valued the property at $270,000.  Finding the appraisal of Lopez to be more reliable, the superior court valued the property at $220,000.

¶6        At the court's direction, BMO applied for $72,668.50 in attorneys' fees and $17,910.79 in costs.  It also lodged a form of judgment for a deficiency of $77,114.63 plus interest.  When the Estate did not object, the court entered judgment for the deficiency balance and the entirety of BMO's claimed fees and costs.  The Estate then filed a motion under Rule 60(b) requesting relief from judgment for the sole purpose of allowing it to file a response to BMO's fee application.  The court denied the motion.

¶7        The Estate appealed the judgment and the denial of its Rule 60(b) motion, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.    Denial of Summary Judgment

¶8        The Estate argues BMO's claim was barred by the probate nonclaim statute, A.R.S. § 14-3803, and contends the superior court therefore erred in denying its motion for summary judgment.  An order denying summary judgment is generally not appealable or reviewable on appeal from a final judgment.  *Cal X–Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 408, ¶ 105 n.50 (App. 2012).  However, we may review the order if the denial was based on purely legal grounds.  *Id.*  "We review *de novo* whether a pure question of law precluded the denial of summary judgment." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 577, ¶ 22 (App. 2015).

¶9        Section 14-3803 limits the claims that may be presented against a decedent's estate according to the time when such claims arose.

Section 14-3803(C)(2) applies to claims that arose after death of the decedent:

> All claims against a decedent's estate that arise at or after the death of the decedent . . . founded on contract . . . or other legal basis, are barred against the estate, the personal representative and the heirs and devisees of the decedent, unless presented . . . within the later of four months after it arises or the time specified in subsection A, paragraph 1 of this section.

A.R.S. § 14-3803(C)(2). Then, a claim such as this that arises after the decedent's death must be presented within "the later of four months after it arises" or "[t]wo years after the decedent's death plus the time remaining in the period commenced by an actual or published notice pursuant to § 14-3801, subsection A or B." A.R.S. § 14-3803(A)(1).

¶10 Section 14-3801, in turn, describes the notice requirement:

> A. Unless notice has already been given under this section, at the time of appointment a personal representative shall publish a notice to creditors once a week for three successive weeks in a newspaper of general circulation in the county announcing the appointment and the personal representative's address and notifying creditors of the estate to present their claims within four months after the date of the first publication of the notice or be forever barred.
>
> B. A personal representative shall give written notice by mail or other delivery to all known creditors, notifying the creditors of the personal representative's appointment. The notice shall also notify all known creditors to present the creditor's claim within four months after the published notice, if notice is given as provided in subsection A, or within sixty days after the mailing or other delivery of the notice, whichever is later, or be forever barred. A written notice shall be the notice described in subsection A or a similar notice.

A.R.S. § 14-3801.

¶11 The Estate relies on § 14-3801(B), claiming that although BMO had notice of Dorothy's death in May 2017, it did not file its complaint until August 2018, well after any four-month or sixty-day deadline. BMO contends, however, that because the Estate failed to strictly comply with the

4

notice requirement in the second sentence of subsection B, the time to file a claim under § 14-3803 never began to run.

¶12      The Estate concedes it did not comply with its obligation under § 14-3801 to inform BMO, either by publication or by mail or other delivery, that if it did not present its claim within four months of publication or sixty days after mailing or delivery, the claim would be "forever barred." But it argues BMO is a "sophisticated" lender that should have known to file a claim against the Estate after Kenneth dropped off Dorothy's death certificate and the notice of appointment in May 2017. When Kenneth informed BMO of her death, Dorothy had been deceased for about seventeen months. During this seventeen-month period, BMO received payments on the mortgage. BMO sent a letter asking the Estate what its intentions were with Dorothy's account, and noted that any legal heirs could assume Dorothy's obligation. Kenneth failed to respond and did not default on the account until a few months later. Considering payments were made on the mortgage for nearly a year and a half after Dorothy's death, while BMO was unaware of her death, it was not clear to BMO that it needed to immediately present its claim to the Estate in May 2017.

¶13      Regardless of BMO's "sophistication," the plain language of the statute expressly directs the personal representative to notify creditors to present their claims within four months of notice by publication or sixty days of notice by mail or delivery. *See* A.R.S. § 14-3801(B) ("The notice *shall* also notify all known creditors to present the creditor's claim within four months after the published notice, . . . or within sixty days after the mailing or other delivery of the notice, whichever is later, or be forever barred.") (emphasis added). And pursuant to § 14-3803, creditors must present claims that accrue after the death of a decedent "within the later of four months after it arises" and "[t]wo years after the decedent's death *plus the time remaining in the period commenced by an actual or published notice pursuant to § 14-3801*." A.R.S. § 14-3803(A)(1) (emphasis added). In short, the time limit for BMO to present its claim did not commence until the Estate complied with the notice requirements in § 14-3801.

¶14      That statute expressly requires an estate to give a creditor notice, either by publication or by mail or delivery, of the time limits to present its claim. Under a prior version of A.R.S. § 14-3803, claims were barred if not brought within two years of the decedent's death. *In re Estate of Olsen*, 1 CA-CV 20-0343, 2021 WL 1421651, at *2, ¶ 13 (Ariz. App. Apr. 15, 2021); *see also* A.R.S. § 14-3803(B) (1996) (barring claims not brought within two years of the decedent's death). However, in 1998, the legislature

amended the statute to extend the two-year deadline to specifically include the notice period under § 14-3801. *See In re Estate of Olsen*, 1 CA-CV 20-0343, at *2, ¶ 13; *see also* 1998 Ariz. Sess. Laws, ch. 203, § 11 (2d Reg. Sess.) (H.B. 2360). Further, our case law makes clear that "due process requires that known creditors be given actual notice of a non-claim statute's time limits when such time limits are not self-executing and involve significant state action, such as the institution of probate proceedings or the appointment of a personal representative." *In re Estate of Barry*, 184 Ariz. 506, 508 (App. 1996) (finding the four-month period for presenting a claim under prior version of § 14-3803 did not apply when the creditor was not notified that it needed to present its claim within that period).

¶15 These facts mirror those in *BMO Harris Bank, N.A. v. Reid*, 1 CA-CV 14-0013, 2015 WL 1781389 (Ariz. App. Apr. 16, 2015) (mem. decision), cited by both parties.[1] In *BMO Harris Bank*, the estate notified the bank of the decedent's death, but it failed to notify the bank that if it failed to timely file a claim, its claim would be forever barred. *Id.* at *3, ¶¶ 15-16. This court found that because the estate failed to comply with § 14-3803, the bank's claim was not barred under § 14-3801. *Id.* Here, we come to the same conclusion and find that BMO's claim is not barred because the Estate failed to strictly comply with the notice requirements of § 14-3803.

¶16 Accordingly, the superior court did not err in finding that BMO's claim was not untimely and denying the Estate's motion for summary judgment on that ground.

II. Fair Market Value Determination

¶17 The Estate next argues the court erred in relying on BMO's expert witness to find that the fair market value of the property was $220,000 at the time of the trustee's sale. Section 33-814(A) provides in relevant part:

> [A]n action may be maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security including any guarantor of or surety for the contract and any partner of a trustor or other obligor which is a partnership. In any such action against such a

---

[1] Pursuant to Arizona Rule of the Supreme Court 111(c)(1)(C), we cite *BMO Harris Bank* for its persuasive value and because no opinion adequately addresses the issue before the court.

person, the deficiency judgment shall be for an amount equal to the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher.

A.R.S. § 33-814(A).

**¶18** The statute further provides that "[t]he fair market value shall be determined by the court at a priority hearing upon such evidence as the court may allow." A.R.S. § 33-814(A). A property's fair market value is "a factual determination that must be based on the facts and circumstances of each case," and the court has the discretion to rely on a testifying expert's opinion of value. *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). The court "may adopt portions of the evidence from different witnesses," and we "will sustain a result anywhere between the highest and lowest estimate which may be arrived at by using the various factors appearing in the testimony in any combination which is reasonable." *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 233 Ariz. 355, 362-63, ¶ 25 (App. 2013) (citation and internal quotations marks omitted), *vacated in part by* 236 Ariz. 410, 415 (2014). "When a ruling is based on conflicting testimony, we will not disturb the court's ruling by reweighing the evidence." *Id.*

**¶19** The Estate contends it was clearly erroneous for the court "to accept, wholesale, the report of an expert who admitted he used two separate standards to judge the Property versus comparable sales." The Estate argues that BMO's expert "did not consider development costs when considering comparable sales" but then when BMO's expert valued the subject property, the Estate claims the expert "discounted the value due to the potential development costs." This misstates the expert's valuation report. In his report, the Estate's expert, Dominick, emphasized the level topography of the subject property, opining that because the lot was so level, the property would not require the high development costs that properties typically require. In his rebuttal report, BMO's expert, Lopez, disagreed with this characterization of the property, and noted some development costs would likely be required because half of the lot was below the street level. Lopez highlighted these potential development costs in rebuttal to Dominick's report that the subject property would not require large development costs. But no evidence showed that Lopez did not consider development costs when analyzing both the comparable sales and the subject property. And in fact, Lopez's report expressly states that he did consider such costs in his appraisal approach.

7

¶20  Lopez used the sales comparison approach in his valuation and compared six recent and nearby sales to the subject property. These parcels are close to the subject property, sold near the time of the sale of the subject property, and are similar size, shape, and topography as the subject property. As the superior court recognized, minimal adjustments were made to the sale prices of comparison properties, and Lopez valued the subject property at a price similar to the comparable properties. In his analysis of the comparable sales and the subject property, Lopez expressly considered development costs when adjusting sales prices and making the final fair market value determination of the sale property. The superior court found Lopez to be more reliable because Dominick "used a lot comparison for a property farther away from the subject property while omitting three sales within two blocks of the subject property," and Dominick used a listing—not a closed sale—as a comparison lot. The court also found that Dominick made significant adjustments to the prices of the comparable sales, and Dominick testified that "adjustments made by an appraiser are incredibly discretionary and subjective to that appraiser's opinion."

¶21  Reasonable evidence supported the court's findings, and we will not reweigh the evidence. *See Magna Inv. & Dev. Corp. v. Pima County*, 128 Ariz. 291, 294 (App. 1981). The court did not err in relying on BMO's expert witness, Lopez, in determining the fair market value of the property.

III.  Rule 60(b) Motion and Attorneys' Fees

¶22  The Estate argues the superior court erred in denying its Rule 60(b) motion for relief from judgment, which we review for an abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328 (1985).

¶23  The Estate contends it should be relieved from a final judgment for "excusable neglect" or "any other reason justifying relief." *See* Rule 60(b)(1), (6). The deadline for the Estate to file its objection to the attorneys' fee application was May 19, although at the request of the Estate, BMO agreed to extend the deadline to May 22. The Estate's counsel contended he developed "flu-like symptoms" on May 21, and given the current pandemic, counsel stated he needed to isolate. Counsel claimed that his office was understaffed, and so he was unable to reach out to BMO's counsel or the court to notify them of his illness. However, as BMO points out, the Estate failed to inform the court of the agreement between the parties to extend the deadline to May 22, and the Estate's counsel admits he became ill *after* the official deadline of May 19. *See* Rule 7.1(g)(2) ("To make an extension effective, the parties *must* file a notice setting forth the agreed-

upon dates on which the response or reply briefs will be due.") (emphasis added); Rule 7.1(g)(4) ("*The extension is effective upon the filing of the notice of extension*, unless and until the court enters an order disapproving the time extension.") (emphasis added). We do not find the court abused its discretion in denying the Estate's Rule 60(b) motion based on excusable neglect or for any other reason.

¶24 The superior court noted that "practitioners in modern law practice are expected to meet deadlines under challenging and varying circumstances on a regular basis." While the Estate argues "the circumstances surrounding illness carry a little more weight these days" than ordinarily would be the case, counsel fails to explain why he was unable to notify the court and BMO of his situation and request another extension. Counsel concedes his illness was not severe and ultimately was not COVID-19 related. And counsel himself admitted in an email to BMO that he should have communicated, writing: "I should have been in touch with you and the court, and I certainly regret that now." We do not find that the court abused its discretion in finding counsel failed to prove excusable neglect.

¶25 The Estate did not timely object to the fee award, and "legal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits." *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utilities, LLC*, 227 Ariz. 382, 386, ¶ 12 (App. 2011). "If the argument is not raised below so as to allow the trial court such an opportunity, it is waived on appeal." *Id.* Accordingly, the Estate has waived its arguments regarding the attorneys' fee award.

## CONCLUSION

¶26 For the foregoing reasons, we affirm. Both parties request their attorneys' fees and costs pursuant to A.R.S. §§ 12-341, -341.01, and 33-814. Pursuant to the cited statutes, we award BMO, as the prevailing party, its reasonable attorneys' fees and costs upon compliance with ARCAP 21.

